MARK NOWALSKI *et al.*, Plaintiffs-Appellants, v. FORD MOTOR COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 1—02—0947

Opinion filed November 27, 2002.

Adam J. Krohn, of Krohn & Moss, Ltd., of Chicago, for appellants.

Timothy Ray and Emily L. Mulder, both of Neal, Gerber & Eisenberg, of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

Mark and Alice Nowalski purchased a new automobile from Ford Motor Company in October 1995. The vehicle came with a limited 3-year/36,000-mile warranty. They discovered problems with the car's rear axle and brought the car to the dealer for repairs on at least five occasions. Finally, they filed a complaint against Ford in January 2001. Ford contended their action was filed too late, and the trial court entered summary judgment for Ford.

The Nowalskis chose to file their cause of action for breach of warranty under the federal Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Act or the Act) (15 U.S.C. § 2301 et seq. (1994)). The issue in this case is created by the failure of the Act to provide a statute of limitations. As directed, we look to the most analogous state statute of limitations. The parties and the Illinois courts seem to agree that the four-year statute in Uniform Commercial Code (UCC) section 2—725 controls. 810 ILCS 5/2—725 (West 2000).

The question is, when did the plaintiffs' cause of action accrue— when Ford failed to successfully repair the vehicle, or when the vehicle was delivered? If the latter, then the Nowalskis filed too late. Our decision rests on our analysis of this court's decision in *Cosman v. Ford Motor Co.*, 285 Ill. App. 3d 250, 674 N.E.2d 61 (1996). We decline to apply *Cosman* to the facts of this case and affirm the trial court.

FACTS

The UCC statute of limitations section at issue states:

"§ 2—725. Statute of Limitations in Contracts for Sale.

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 810 ILCS 5/2—725 (West 2000).

On October 7, 1995, plaintiffs purchased and took possession of a new 1995 Ford Mustang manufactured by defendant. The car was sold with a "New Vehicle Limited Warranty" that provided:

"Authorized Ford Motor Company dealers will repair, replace or adjust all parts on your vehicle (except tires) that are defective in

factory-supplied materials or workmanship for 3 years or 36,000 miles (whichever occurs first)."

Plaintiffs' complaint alleged the rear axle assembly of the vehicle was defective. They took the car to various Ford service dealers to have repairs performed on the rear axle. On appeal, plaintiffs contend there were five unsuccessful repair attempts—on August 30, 1996; October 5, 1998; October 14, 1998; December 15, 1998; and February 23, 1999.[1] The car was delivered on October 7, 1995. The final three repair attempts took place after the expiration of the warranty period. Plaintiffs filed their complaint on January 29, 2001.

The complaint alleged causes of action under the Magnuson-Moss Act for breach of implied warranty, breach of the express "repair or replace" warranty, and revocation of acceptance. Defendant moved to dismiss on grounds other than the statute of limitations. That motion was denied. Discovery was conducted and completed. At the mandatory arbitration that followed, an award was entered for plaintiffs in the amount of $5,000, plus attorney fees and costs of $4,309.65. Plaintiffs rejected the arbitrators' award, and the case was assigned to the circuit court's trial calendar.

Ford then moved for summary judgment, arguing plaintiffs' claims for breach of implied warranty and breach of written warranty were barred by the statute of limitations, which began to run on October 7, 1995, the date of delivery of the vehicle. Plaintiffs voluntarily dismissed their claim for breach of implied warranty, under the decision in *Cosman*, 285 Ill. App. 3d at 257.[2] However, plaintiffs contended their claim for express warranty was filed within the appropriate time period because the cause of action accrued October 5, 1998, at the latest. The trial court granted Ford's motion. This appeal followed.

DECISION

■ Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, affidavits, and admissions on file show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30-31, 719 N.E.2d 756 (1999). We conduct a *de novo* review of a grant of summary judgment. *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001).

---

[1]In their reply brief, the plaintiffs, citing to the common law record, contend another repair attempt took place on August 28, 1997.

[2]The *Cosman* court held a cause of action for breach of implied warranty accrues upon delivery under section 2—725(2) of the UCC. *Cosman*, 285 Ill. App. 3d at 257.

■ The Magnuson-Moss Act creates civil actions for consumers in state or federal court when suppliers, warrantors, or service contractors violate the provisions of the Act. 15 U.S.C. § 2310(d)(1) (1994). Although the Act does not require any consumer product to be warranted (15 U.S.C. § 2302(b)(2) (1994)), if a manufacturer or supplier chooses to warrant a product, the Act imposes specific minimum federal standards for warranties (15 U.S.C. § 2304(a) (1994)). A consumer who prevails against the warrantor may elect repair, replacement, or refund of defective parts. 15 U.S.C. § 2301(10) (1994). If the product cannot be repaired after a reasonable number of attempts, the consumer may elect either a replacement or a refund. 15 U.S.C. § 2304(a)(4) (1994).[3]

■ The Act does not contain a statute of limitations. Where a federal statute creates a cause of action but does not establish a limitations period for that action, state courts will apply the statute of limitations governing the state cause of action most closely analogous to the federal action. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158-60, 76 L. Ed. 2d 476, 485-87, 103 S. Ct. 2281, 2287-89 (1983). Illinois courts are in agreement that the four-year statute in UCC section 2—725 applies to Magnuson-Moss claims. 810 ILCS 5/2—725 (West 2000); *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1149, 759 N.E.2d 66 (2001); *Evans v. General Motors Corp.*, 314 Ill. App. 3d 609, 614, 732 N.E.2d 79 (2000); *Portwood v. Ford Motor Co.*, 292 Ill. App. 3d 478, 481, 685 N.E.2d 941 (1997); *Cosman*, 285 Ill. App. 3d at 255.

This case turns on whether and how we should apply the holding in *Cosman*. The Nowalskis say we are obligated by the principle of *stare decisis* to adhere to the holding in *Cosman*, the only Illinois case to consider the precise issue before us. Should we agree, we would decide their cause of action accrued when Ford breached its promise to repair, that is, when Ford failed to successfully repair the defects "after a reasonable number of attempts" or "within a reasonable time." That would be a fact issue for further proceedings. The plaintiffs agree the undertaking of but one repair effort cannot, alone,

---

[3]A recent Second District case held the provisions of section 2304 of the Act apply only to full warranties, not limited warranties, such as the one in this case. *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 60, 770 N.E.2d 721 (2002), citing *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 324, 722 N.E.2d 227 (1999). In the case of a limited warranty, according to *Lara*, we would rely on UCC cases holding the seller must correct the defects "within a reasonable time." 331 Ill. App. 3d at 62, citing *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 315 Ill. App. 3d 248, 257-58, 733 N.E.2d 718 (2000).

constitute a breach. Therefore, the time of breach could occur after a second failed effort, on October 5, 1998.

In *Cosman*, the plaintiffs filed suit under the Act in 1994 against the manufacturers of a motor home purchased in 1989. They alleged the manufacturers failed to repair the motor home after several unsuccessful attempts in 1990 and 1991. The motor home came with a warranty covering defects in the powertrain of the vehicle *for 6 years* or 60,000 miles after the delivery date. Other than its duration, the warranty contained nearly identical language to the warranty in this case, stating:

> " 'Under the Limited Warranty *** Ford warrants that your selling dealer will repair, replace, or adjust all parts (expect [*sic*] tires) that are found to be defective in factory-supplied materials or workmanship. The defects must occur under normal use of the vehicle during the warranty coverage period.' " *Cosman*, 285 Ill. App. 3d at 257.

The trial court dismissed the Magnuson-Moss counts with prejudice, finding the four-year statute under section 2—725 began to run on September 12, 1989, when the plaintiffs took delivery, and the action was not filed within that limitations period.

On appeal, this court reversed the trial court, holding the promise to repair was an independent obligation that was not breached until the seller failed to repair. *Cosman*, 285 Ill. App. 3d at 260-61. The plaintiffs argued that applying section 2—725(2) to find the cause of action accrued at the time of delivery of the vehicle would lead to an unfair result. It would render "the remaining years of manufacturers' warranties of more than four years illusory and unenforceable." *Cosman*, 285 Ill. App. 3d at 255. Noting that the plaintiffs' warranty expired two years after the statute of limitations had run, the court focused on its problem with the trial court's disposition: "[T]he Cosmans are holding warranties that have not expired, but are unable to legally enforce them. There appears to be no Illinois decision that offers precise guidance." *Cosman*, 285 Ill. App. 3d at 253.

Our case differs from *Cosman*. There, the warranty ran two years beyond the four-year statute of limitations in section 2—725(1). The *Cosman* court was faced with a dilemma that smacked of potential inequity, bordering on absurdity. We face no such problem. Given Ford's theory, the three-year warranty extended to the Nowalskis would run out before the four-year statute of limitations expired.

In order to reach the result it did, the *Cosman* court applied subsection (1) of UCC section 2—725 for the statute of limitations, but then read subsection (2) out of existence. See *Cosman*, 285 Ill. App. 3d at 258-59 ("We do not apply the Code's second paragraph

\*\*\*''). Subsection (1) states an action for breach of contract must be commenced within four years after a cause of action has accrued. Subsection (2) defines when a cause of action accrues—at time of delivery, or, if the warranty explicitly extends to future performance of the goods, when the breach is or should have been discovered. Once it rejected subsection (2), the court concluded, without statutory support, that the breach occurs when the manufacturer does not repair the vehicle.

The court's holding requires surgical removal of all of subsection (2), since everyone agrees the phrase "where a warranty explicitly extends to future performance of the goods" does not apply here because the warranty extends to Ford's promise, not the performance of the vehicle. The *Cosman* court reasoned that Illinois courts have construed the future performance exception in section 2—725 narrowly, citing *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982), where the supreme court concluded the defendant's express warranty of durability of a tank did not explicitly extend to future performance. The warranty stated a bulk tank was designed to " 'withstand 60 lbs. per bushel grain and 100 m.p.h. winds.' " 91 Ill. 2d at 92. The supreme court adopted the definition of "explicit" as "not implied merely, or conveyed by implication; distinctly stated; plain in language; clear; not ambiguous; express; unequivocal." 91 Ill. 2d at 93-94. The court held: "The mere expectation that a product's warranty extends for the life of the product does not delay the point at which the statute of limitations commences to run." *Moorman*, 91 Ill. 2d at 94. The *Cosman* court distinguished the plaintiffs' warranty from a warranty explicitly extending to future performance, finding the "promise to repair parts of the powertrain for six years [was] a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way." *Cosman*, 285 Ill. App. 3d at 257.

The *Cosman* court next rejected the remaining words of subsection (2)—a cause of action for breach of warranty "occurs when tender of delivery is made." 810 ILCS 2—725(2) (West 1994). The court disavowed this portion of subsection (2) by finding the promise to repair was not an "express warranty" as defined by the UCC,[4] because the promise related to Ford's obligations to repair under the contract,

---

[4]"Express warranty" is defined by the UCC as:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

not to the quality of the goods. *Cosman*, 285 Ill. App. 3d at 259, citing *Nationwide Insurance Co. v. General Motors Corp.*, 533 Pa. 423, 438, 625 A.2d 1172, 1180 (1993) (Zappala, J., dissenting) ("repair and replace" warranty does not fit within the UCC definition, which "establishes as a term of the agreement certain qualities of the goods being sold").

By contrast, the definition of "written warranty" under the Magnuson-Moss Act applied to the plaintiffs' warranty, the court concluded.[5] For its definition of breach, *Cosman* looked to section 2304 of the Act, which states the consumer must allow the warrantor a "reasonable number of attempts" to remedy defects before the consumer may elect a refund or replacement of a defective product. 15 U.S.C. § 2304(a) (1994); *Sadat v. American Motors Corp.*, 114 Ill. App. 3d 376, 448 N.E.2d 900 (1983). That is not a limitations provision but, rather, a remedies provision.

The *Cosman* court concluded the plaintiffs' cause of action accrued when the promise to repair was breached and extended four years from that time. *Cosman*, 285 Ill. App. 3d at 260-61. This result did the "least violence" to the UCC and the Magnuson-Moss Act, by "preserv[ing] a four-year statute of limitations for promises that are part of a contract for the sale of goods, while recognizing that the Magnuson-Moss remedy for breach of a promise to repair cannot ripen until the promise is broken and has nothing to do with the inherent

---

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." 810 ILCS 5/2—313(1) (West2000).

[5]The Act defines "written warranty" as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6) (1994).

quality of the goods or their future performance." 285 Ill. App. 3d at 261.

Both sides agree the "future performance" phrase in section 2—725(2) does not apply to this case. If we, unlike the *Cosman* court, decline to write off subsection (2), the second sentence of that provision would read: "A breach of warranty occurs when tender of delivery is made." The words we are left with are clear and unambiguous. Once section 2—725 is chosen as the correct analogy, there is no authority to support *Cosman*'s decision to completely ignore subsection (2). There is nothing in subsection (1) that gives courts, consumers, or manufacturers any guidance or direction concerning when the breach of warranty occurs. We look to subsection (2) of section 2—725 and find the cause of action accrued at the time of delivery. See *Tittle v. Steel City Oldsmobile GMC Truck, Inc.*, 544 So. 2d 883, 891 (Ala. 1989) (plaintiff's contention that the cause of action does not accrue until refusal or failure to repair contradicts the plain meaning of section 2—725, which states that a cause of action accrues when a breach occurs, and a breach occurs upon tender of delivery, regardless of the buyer's knowledge of the breach, unless the warranty explicitly extends to future performance).

█ Relying entirely on subsection (1) of section 2—725 is pointless. Standing alone, it gives no guidance for determining when a cause of action accrues. The legislature obviously intended both sections to be read together. We decline to engage in creative editing, unsupported by statute or decision. Our decision to enforce section 2—725 as written does not lead to the unfair result the *Cosman* court sought to avoid. The Nowalskis' warranty necessarily ran out at least one year before expiration of the statute of limitations. While we owe great deference to decisions of appellate courts of the First District, blind allegiance is not required. See *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1102, 697 N.E.2d 868 (1998) (doctrine of *stare decisis* does not bind courts to follow decisions of equal or inferior courts).

We understand our holding in this case gives the appearance of creating one rule for warranties that extend beyond a statute of limitations and another where the warranty expires before the running of the statute of limitations. Whether this is a principled distinction with a justified existence is a question that awaits further developments—in the courts or in the General Assembly.

CONCLUSION

We affirm the decision and rulings of the trial court.

Affirmed.

SOUTH, P.J., and HALL, J., concur.