FIFTH DIVISION
March 31, 2006

No. 1-03-1402

| | | |
|---|---|---|
| LUCY MYDLACH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| DAIMLERCHRYSLER CORPORATION, | ) | Honorable |
| | ) | P. Scott Neville, |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff Lucy Mydlach brought this action against defendant DaimlerChrysler Corporation under the Magnuson-Moss Warranty--Federal Trade Commission Improvement Act (Act or Magnuson-Moss Act) (15 U.S.C. § 2301 *et seq.* (2000)) after she purchased a used car manufactured by defendant which was allegedly defective. Plaintiff's three-count complaint alleged breach of written warranty (count I), breach of implied warranty of merchantability (count II), and revocation of acceptance (count III). Defendant filed a motion for summary judgment, contending that plaintiff's claims were barred by the four-year statute of limitations included in section 2-725 of the Uniform Commercial Code--Sales (Code or UCC) (810 ILCS 5/2-725 (West 2000)). The trial court granted defendant's motion, and plaintiff now appeals, contending the trial court erred in finding that her claims were time barred. She further contends that the trial court should have recognized her claim for revocation of acceptance because the Act permits consumers to recover equitable relief.

1-03-1402

In a previously filed opinion, we affirmed the trial court's entry of summary judgment on count II and reversed its entry of summary judgment on counts I and III. Mydlach v. DaimlerChrysler Corp., No. 1-03-1402 (September 30, 2005). In a petition for rehearing, defendant contends that the trial court properly entered summary judgment on counts I and III and argues that the Magnuson-Moss Act does not apply to the limited warranty at issue in the instant case. Upon consideration of defendant's petition for rehearing, we conclude that our previous decision reversing the trial court's entry of summary judgment on counts I and III was proper.

BACKGROUND

On June 20, 1998, plaintiff bought a used 1996 Dodge Neon, manufactured by defendant, from McGrath Buick Nissan (McGrath) in Elgin, Illinois. The car was put in service to its original buyer on June 24, 1996. At that time, the car carried a 3-year/36,000-mile warranty. When plaintiff bought the car on June 20, 1998, about one year or 10,000 miles remained on the warranty.

Within approximately 17 days of buying the car, plaintiff tendered it to an authorized dealer of defendant for repairs. On July 7, 1998, she brought in the car complaining of a squealing noise in the brakes. On July 15, 1998, she brought in the car for a fluid leak. On July 24, 1998, repairs were performed for a transmission leak, a creaking noise while shifting, failure of the transaxle, and failure of the engine mounts. On July 31, 1998, the car was repaired for a leak and the failure of the drive shaft. On August 6, 1998, repairs were performed for the same problems. Finally, on August 21, 1998, the car was repaired for a rattle in the front end due to a defective tire. At the time of this repair, the car's mileage was 31,103 miles.

On May 16, 2001, plaintiff filed her three-count complaint against defendant. In count I

2

plaintiff alleged breach of written warranty based upon the limited written warranty provided by defendant. The warranty states in relevant part:

> "WHAT'S COVERED
>
> *** The 'Basic Warranty' covers the cost of all parts and labor needed to repair any item on your vehicle (except as noted below) that's defective in material, workmanship or factory preparation. You pay nothing for these repairs. The 'Basic Warranty' covers every Chrysler supplied part of your vehicle, EXCEPT its tires and cellular telephone. *** These warranty repairs or adjustments (parts and labor) will be made by your dealer at no charge using new or remanufactured parts."

Plaintiff alleged that as a result of ineffective repair attempts by defendant, she could not use the car as she had intended. Specifically, plaintiff alleged that defendant failed to properly diagnose a fluid leak despite seven repair attempts and alleged she was entitled to seek relief under section 2310(d)(1) of the Magnuson-Moss Act (15 U.S.C. § 2310(d)(1) (2000)).

In count II, plaintiff alleged that her car "was subject to an implied warranty of merchantability as defined in [section 2301(7) of the Act (15 U.S.C. § 2301(7) (2000))] running from [defendant] to the intended consumer, plaintiff." Plaintiff alleged that defendant breached this warranty as the defect in her car rendered it "unmerchantable and thereby not fit for the ordinary and essential purpose for which [it] was intended and as represented by [defendant]."

In count III, which is styled "Revocation of Acceptance Pursuant to Section 2310(d) of the [Act] Manufacturer," plaintiff alleged that defendant's tender of her car "constitutes a violation of 15 U.S.C. § 2310(d)."

Defendant filed a motion for summary judgment, seeking dismissal of all three counts. In the motion, defendant contended that the express and implied warranty claims were subject to the four-year statute of limitations included in section 2-725 of the UCC (810 ILCS 5/2-725 (West 2000)), that the statute had begun running upon purchase by the original buyer on June 24, 1996, and that counts I and II of plaintiff's May 2001 complaint were thus time barred. Defendant further contended the claim for revocation in count III should be dismissed because no privity existed between defendant and plaintiff and because plaintiff could not prove a breach of implied warranty of merchantability.

The trial court granted defendant's motion for summary judgment, finding that plaintiff's complaint was untimely, and denied plaintiff's motion for reconsideration.

ANALYSIS

Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000); Petrovich v. Share Health Plan of Illinois, Inc., 188 Ill. 2d 17, 30-31 (1999). Our review of a grant of summary judgment is *de novo*. Morris v. Margulis, 197 Ill. 2d 28, 35 (2001). We may affirm on any ground supported by the record, even if that ground was not relied on by the trial court. Valenti v. Mitsubishi Motor Sales of America, Inc., 332 Ill. App. 3d 969, 971 (2002), citing Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 97 (1995).

The Magnuson-Moss Act was designed "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15

U.S.C. § 2302(a) (2000). "Although the Act does not require any consumer product to be warranted [citation], if a manufacturer or supplier chooses to warrant a product, the Act imposes specific minimum federal standards for warranties [citation]." Nowalski v. Ford Motor Co., 335 Ill. App. 3d 625, 628 (2002). The Magnuson-Moss Act "provides a statutory private right of action to consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract.' " Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376, 386 (2004), quoting 15 U.S.C. § 2310(d)(1) (1994). "A consumer who prevails [under the Act] may elect repair, replacement, or refund of defective parts." Cosman v. Ford Motor Co., 285 Ill. App. 3d 250, 255 (1996), citing 15 U.S.C. § 2301(10) (1994).

## I.  Breach of Written Warranty (Count I)

Plaintiff contends that the trial court improperly dismissed her breach of express warranty claim based on its conclusion that it was barred by the statute of limitations. Count I of plaintiff's complaint seeks relief pursuant to section 2310(d)(1) of the Act (15 U.S.C. § 2310(d)(1) (2000)) and alleges that defendant issued a written warranty promising to repair defects in plaintiff's car and that it breached that warranty by failing to repair defects in plaintiff's car despite various attempts to do so.

We note as a preliminary matter that plaintiff filed all three of the counts in her complaint under the Act, a federal statute which does not provide a statute of limitations. See Nowalski, 335 Ill. App. 3d at 626, 628. "Where a federal statute creates a cause of action but does not establish a limitations period for that action, state courts will apply the statute of limitations governing the state

cause of action most closely analogous to the federal action." Nowalski, 335 Ill. App. 3d at 628, citing DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158-60, 76 L. Ed. 2d 476, 485-87, 103 S. Ct. 2281, 2287-89 (1983). The Illinois action most analogous to plaintiff's warranty claims is an action for breach of warranty in a contract for sale. Cosman, 285 Ill. App. 3d at 255. This state law action is subject to the four-year statute of limitations included in section 2-725 of the UCC (810 ILCS 5/2-725 (West 2000)), and accordingly we conclude, and the parties agree, that this statute of limitations is applicable in the instant case. Cosman, 285 Ill. App. 3d at 255; Nowalski, 335 Ill. App. 3d at 626, 628.

Section 2-725 of the UCC states in relevant part:

"Statute of Limitations in Contracts for Sale. (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made*, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (Emphasis added.) 810 ILCS 5/2-725 (West

6

2000).

While the parties agree that plaintiff was required under section 2-725 of the UCC to file her claim for breach of express warranty within four years after her cause of action accrued, they disagree about when that cause of action accrued. Plaintiff contends the four-year statute of limitations in section 2-725(1) of the UCC began running on June 20, 1998, when the used 1996 Dodge Neon was delivered to her, and that the trial court thus erred in finding that her complaint, filed in 2001, was untimely. Defendant responds that the statute of limitations began running on June 24, 1996, when the car was delivered to its first buyer, and that plaintiff's complaint was thus time barred.

We note that the written warranty at issue in the instant case is essentially a promise to repair defects in plaintiff's car. The question in the instant case is when did plaintiff's cause of action for breach of express warranty to repair accrue (i.e., when did breach of that warranty allegedly occur) and in turn trigger the running of the statute of limitations. This court has previously addressed this question and arrived at two distinct conclusions. See Cosman, 285 Ill. App. 3d 250; Nowalski, 335 Ill. App. 3d 625.

In Cosman, the plaintiffs purchased a motor home in 1989 and in 1994 filed a complaint under the Act for breach of express and implied warranties against the manufactures of that vehicle. Cosman, 285 Ill. App. 3d at 253. The vehicle came with a limited express warranty provided by manufacturer Ford which covered defects in its powertrain for six years or 60,000 miles after the delivery date. Cosman, 285 Ill. App. 3d at 257. The warranty stated as follows:

" 'Under the Limited Warranty *** Ford warrants that your selling

7

> dealer will repair, replace, or adjust all parts (expect [sic] tires) that are found to be defective in factory-supplied materials or workmanship. The defects must occur under normal use of the vehicle during the warranty coverage period.' " Cosman, 285 Ill. App. 3d at 257.

The trial court dismissed the counts for breach of express and implied warranties, ruling that they were barred by the four-year statute of limitations included in section 2-725 of the UCC (810 ILCS 5/2-725 (West 1994)). Cosman, 285 Ill. App. 3d at 254. The trial court found that the statute of limitations began to run on September 12, 1989, when the plaintiffs took delivery of the vehicle, and that plaintiffs' 1994 complaint was thus not timely filed. Cosman, 285 Ill. App. 3d at 254.

On appeal, this court reversed the trial court's dismissal of the plaintiffs' express warranty claim against manufacturer Ford. Cosman, 285 Ill. App. 3d at 261. The court found that the four-year statute of limitations included in subsection (1) of section 2-725 of the UCC began to run on the express warranty claim not on the date the plaintiffs took delivery of the vehicle, but when Ford allegedly refused or failed to properly repair the vehicle. Cosman, 285 Ill. App. 3d at 260-61.

The court recognized that subsection (2) of section 2-725 of the UCC "provides the statute of limitations for a breach of warranty accrues upon delivery." Cosman, 285 Ill. App. 3d at 258-59. The court, however, declined to apply that subsection, finding that the promise to repair which plaintiffs alleged in their complaint did not fall within the UCC's definition of "warranty." Cosman, 285 Ill. App. 3d at 259. The court specifically noted that the UCC defines "express warranty" to mean:

" '(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods *shall conform to the* affirmation or *promise*.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.' " (Emphasis added.) Cosman, 285 Ill. App. 3d at 259, quoting 810 ILCS 5/2-313 (West 1994).

The court found that the promise to repair in the warranty before it did not fit within the above definition. Cosman, 285 Ill. App. 3d at 259. The court recognized that the promise to repair was made as part of the sale of the goods and related to the goods. Cosman, 285 Ill. App. 3d at 259. It emphasized, however, that the promise did not "warrant" the quality or performance of the vehicle and that "goods cannot 'conform to the *** promise' to repair." Cosman, 285 Ill. App. 3d at 259. Accordingly, because the UCC did not include promises to repair within its definition of "express warranty," the court declined to apply section 2-725(2) of the UCC, which states that a cause of action for breach of warranty accrues upon delivery. Cosman, 285 Ill. App. 3d at 259. The court further reasoned that interpreting a repair warranty as though it were a performance warranty would "lead[] to a judicial broadening of the carefully drafted [UCC]." Cosman, 285 Ill. App. 3d at 260.

In contrast to the UCC, the court recognized, the  Magnuson-Moss Act does include promises to repair within its definition of "written warranty." Cosman, 285 Ill. App. 3d at 259-60.

9

The court noted that the Act defines "written warranty" as:

    " '(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

    (B) *any undertaking in writing in connection with the sale by a supplier of a consumer product to* refund, *repair*, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.' " (Emphasis added.) Cosman, 285 Ill. App. 3d at 259-60, quoting 15 U.S.C. § 2301(6) (1994).

After observing that Ford's promise to repair fell within the Act's definition of "written warranty," the court looked to the Act for guidance in determining when a cause of action for breach of a written warranty to repair accrues. The court concluded that a breach of the repair warranty under the Act could not occur until Ford refused or failed to repair. Cosman, 285 Ill. App. 3d at 260-61. In support of this conclusion, the court relied upon section 2304(a) of the Act, which requires consumers to allow warrantors a " 'reasonable number of attempts *** to remedy defects' before the consumer may elect a refund or replacement of a defective product." Cosman, 285 Ill. App. 3d at 260, quoting 15 U.S.C. § 2304(a)(4) (1994). In addition, the court cited Sadat v.

10

1-03-1402

American Motors Corp., 114 Ill. App. 3d 376 (1983). Cosman, 285 Ill. App. 3d at 260. In Sadat, the

reviewing court acknowledged that under the Act, "[t]he warrantor's failure to allow the consumer to

elect replacement or refund gives rise to an action at law for breach of warranty in which the

consumer must prove only that a defect in the product exists which the warrantor was unable to

repair after a reasonable number of attempts." Sadat, 114 Ill. App. 3d at 382-83.

The court in Cosman ultimately concluded:

"The result we reach here does the least violence to two

legislative acts - the [UCC] and the [Act] - drafted without an eye on

the other. It preserves a four-year statute of limitations for promises

that are part of a contract for the sale of goods, while recognizing that

the Magnuson-Moss remedy for breach of a promise to repair cannot

ripen until the promise is broken and has nothing to do with the

inherent quality of the goods or their future performance.

Under Ford's 6-year or 60,000-mile warranty, plaintiffs may

not claim that the vehicle was not of the quality bargained for, but

Ford is still obligated by a term of the contract to make repairs. The

refusal or failure to repair is actionable as a breach and the cause of

action accrues when the promise of repair is breached and extends

four years from that time." Cosman, 285 Ill. App. 3d at 261.

Here, as in Cosman, the manufacturer provided a written limited warranty which included a

promise to repair. Specifically, that warranty provides that it "covers the cost of all parts and labor

11

needed to repair any item on your vehicle (except as noted below) that's defective in material, workmanship or factory preparation." Like the consumer in <u>Cosman</u>, plaintiff filed a count under the Act alleging breach of that warranty. Like the consumer in <u>Cosman</u>, plaintiff took her car to an agent of defendant several times, while the car was still under warranty, seeking repair for the same problems. Despite several attempts, defendant allegedly failed to successfully repair plaintiff's car. Following <u>Cosman</u>, we conclude plaintiff's right to bring a breach of written warranty action based on the promise to repair accrued when defendant allegedly failed to successfully repair her car after a reasonable number of attempts and that the four-year statute of limitations did not begin to run until that time.

In <u>Nowalski</u>, the appellate court revisited the issue addressed by the court in <u>Cosman</u> - whether a consumer's action for breach of a written repair warranty accrues when the manufacturer allegedly fails to successfully repair the vehicle or when the vehicle is delivered to the consumer. See <u>Nowalski</u>, 335 Ill. App. 3d 625. The court in <u>Nowalski</u> found that an action for breach of a repair warranty accrues on the day the vehicle is delivered and thus triggers the statute of limitations on that date. <u>Nowalski</u>, 335 Ill. App. 3d at 631-32. In reaching this conclusion, the court relied upon the language of section 2-725 of the UCC. <u>Nowalski</u>, 335 Ill. App. 3d at 631-32. That section, as noted above, states in relevant part:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. ***

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.

> *A breach of warranty occurs when \*\*\* delivery is made*, except that
> where a warranty explicitly extends to future performance of the
> goods and discovery of the breach must await the time of such
> performance the cause of action accrues when the breach is or should
> have been discovered." (Emphasis added.) 810 ILCS 5/2-725 (West
> 2000).

The court noted that "[t]here is nothing in subsection (1) [of section 2-725 of the UCC] that gives courts, consumers, or manufacturers any guidance or direction concerning when the breach of warranty occurs." Nowalski, 335 Ill. App. 3d at 632. The court additionally noted that the parties agreed that the "future performance" phrase in subsection (2) did not apply to the case before it, and that the remaining words of that subsection, " '[a] breach of warranty occurs when tender of delivery is made,' " were "clear and unambiguous." Nowalski, 335 Ill. App. 3d at 632. Based upon that language in subsection (2), the court found the plaintiffs' cause of action accrued at the time of delivery. Nowalski, 335 Ill. App. 3d at 632.

Although the Nowalski court extensively discussed the Cosman decision, it declined to follow that decision, reasoning that Cosman "read subsection (2) out of existence." Nowalski, 335 Ill. App. 3d at 629. The court in Nowalski acknowledged that Cosman relied on section 2304(a) of the Act, which provides that the consumer must allow the warrantor a "reasonable number of attempts" to remedy defects before the consumer may elect a refund or replacement of a defective product. Nowalski, 335 Ill. App. 3d at 631. However, the Nowalski court characterized section 2304(a) of the Act as a remedies provision and not a limitations provision. Nowalski, 335 Ill. App.

13

1-03-1402

3d at 631.

We decline to follow the <u>Nowalski</u> court's conclusion that section 2-725(2) of the UCC is applicable to repair warranties. As noted earlier, section 2310(d)(1) of the Act authorizes consumers to bring a private right of action for breach of written warranty (see <u>Borowiec</u>, 209 Ill. 2d at 386, quoting 15 U.S.C. § 2310(d)(1) (1994)) and generally calls for the application of state written and implied warranty law. See <u>Walsh v. Ford Motor Co.</u>, 807 F.2d 1000, 1012 (D.C. Cir. 1986). However, as noted in <u>Cosman</u>, while the UCC does not include promises to repair in its definition of "express warranty," section 2301(6) of the Magnuson-Moss Act does include promises to repair within its definition of "written warranty." See <u>Cosman</u>, 285 Ill. App. 3d at 259-60; 15 U.S.C. § 2301(6) (2000).

Accordingly, we, like the <u>Cosman</u> court, believe it appropriate to look to the Magnuson-Moss Act to assist us in determining when plaintiff's action under section 2310(d)(1) for breach of her written repair warranty accrued. The plain language of section 2310(e) of the Act supports our conclusion that a breach of a repair warranty under section 2310(d)(1) occurs when the warrantor fails to successfully repair the product after a reasonable number of attempts during the period of the written warranty. Section 2310(e) of the Act is entitled "Class actions; *conditions*; procedures applicable" (emphasis added) and states as follows:

> "No action *** may be brought under subsection (d) of this section
>
> for failure to comply with any obligation under any written or implied
>
> warranty or service contract *** unless the person obligated under
>
> the warranty or service contract is afforded a *reasonable opportunity*

14

> *to cure* such failure to comply."  (Emphasis added.) 15 U.S.C. §
>
> 2310(e) (2000).

The plain language of section 2310(e) stating that no action may be brought under section 2310(d) unless the person obligated under the warranty is afforded a "reasonable opportunity to cure" reflects that the right to bring a section 2310(d) breach of written repair warranty action cannot accrue before the warrantor has had a reasonable opportunity to repair the defect in question.

We note that contrary to the Nowalski court's assertion, Cosman does not read section 2-725(2) of the UCC out of existence.  Rather, Cosman recognizes that section 2-725(2), which is based upon a definition of "warranty" that does not include promises to repair, is not applicable in light of the provisions of the Act.  Cosman, 285 Ill. App. 3d at 259-60.  In addressing plaintiff's claim under section 2310(d)(1), we are mindful that the Act should be evaluated as a whole and that "each provision should be construed in connection with every other section."  See Bonaguro v. County Officers Electoral Board, 158 Ill. 2d 391, 397 (1994).  Accordingly, for the reasons previously discussed and consistent with both Cosman and the provisions of the Act (15 U.S.C. §§ 2301(6), 2310(d)(1), 2310(e) (2000)), we hold that the purchaser of secondhand goods has four years to file an action for breach of a limited written warranty to repair following the failure to successfully repair after a reasonable number of attempts during the period of the written warranty.

In the factual context of this case it is significant that plaintiff, within the first 60 days of owning the car and with approximately 1 year or 8,000 miles remaining on the written repair warranty, allegedly presented it for repair of the same defect on several occasions.  The failure to repair a car within the period of a written warranty which includes a promise to repair is actionable

as a breach of that express warranty. Here, plaintiff sought repair of the alleged defect in her car within the period of the written warranty and filed her action within four years of defendant's alleged failure to repair. Thus, we conclude that the four-year statute of limitations in section 2-725(1) of the UCC did not bar plaintiff's express warranty claim, and we reverse the portion of the trial court's order granting summary judgment in defendant's favor on count I of plaintiff's complaint.

In its petition for rehearing, defendant asserts that we erroneously reversed the trial court's entry of summary judgment in its favor on plaintiff's express warranty claim. Defendant contends that we improperly applied the Magnuson-Moss Act rather than the UCC to plaintiff's claim for breach of express warranty. In support of this contention, defendant notes the express warranty at issue in this case was a "limited" warranty and argues "Magnuson-Moss does not apply to limited warranties." We reject defendant's argument. Plaintiff brought her breach of written warranty claim pursuant to section 2310(d)(1) of the Act. As previously noted in this opinion, section 2310(d)(1) of the Act "provides a statutory private right of action to consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor *to comply with any obligation \*\*\* under a written warranty*, implied warranty, or service contract.' " (Emphasis added.) Borowiec, 209 Ill. 2d at 386, quoting 15 U.S.C. § 2310(d)(1) (1994). The Act defines "written warranty" in relevant part as "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." 15 U.S.C. § 2301(6) (2000). Here, defendant promised in writing to repair any part (except for tires) on the car purchased by plaintiff which was defective in material, workmanship, or factory preparation. Thus, plaintiff

was entitled to bring an action under the Act based on the alleged breach of the limited written warranty provided by defendant.

To support its argument that the Magnuson-Moss Act does not apply to limited warranties, defendant cites Lara v. Hyundai Motor America, 331 Ill. App. 3d 53 (2002), Bartow v. Ford Motor Co., 342 Ill. App. 3d 480 (2003), and Pearson v. DaimlerChrysler Corp., 349 Ill. App. 3d 688 (2004). We find defendant's reliance on these cases misplaced.

In Lara, the court stated that "[i]t is clear that all of section 2304, including subsection 2304(b)(2), is intended to apply to full warranties only." Lara, 331 Ill. App. 3d at 60. The court, however, did not state that the Magnuson-Moss Act as a whole does not apply to limited warranties. Indeed, the court recognized that a plaintiff may bring a claim under section 2310(d)(1) of the Act for breach of an express limited warranty. See Lara, 331 Ill. App. 3d at 59, 61. Specifically the court stated: "[w]e conclude that section 2304(b)(2) [which allows a warrantor to condition refund or replacement of a product upon the consumer's return of that product free of encumbrances] does not bar plaintiff's claim under section 2310(d)(1) for a breach of the express limited warranty." Lara, 331 Ill. App. 3d at 61.

In Bartow, the reviewing court addressed whether a consumer had standing to bring, inter alia, a breach of limited written warranty action under the Act even though she no longer owned the subject vehicle or the related warranty at the time she filed her suit. Bartow, 342 Ill. App. 3d at 489. In reviewing this issue, the court in Bartow asserted that Lara found that "the Act only governs 'full' warranties." Bartow, 342 Ill. App. 3d at 487, citing Lara, 331 Ill. App. 3d at 62. This assertion that the Act generally only governs full warranties indicates an expansion of

Lara's more limited statement that section 2304 of the Act is intended to apply only to full warranties. Moreover, this assertion contradicts Lara's statement that a consumer may bring an action for breach of express limited warranty under section 2310(d)(1) of the Act.

In Pearson, the plaintiffs filed claims for breach of express limited warranty under the Act. Pearson, 349 Ill. App. 3d at 689. On review the court addressed whether a warrantor is required under a standard automobile repair and replace warranty to fix the automobile within a reasonable number of attempts. Pearson, 349 Ill. App. 3d at 693. In resolving this issue, the court found it was necessary to look not to the provisions of the Act but to the UCC. Pearson, 349 Ill. App. 3d at 694. To support this finding, the court cited Bartow for the proposition that limited warranties are not governed by the Act (Pearson, 349 Ill. App. 3d at 693) and quoted Lara's assertion that " 'all of section 2304 applies to "full warranties" only.' " Pearson, 349 Ill. App. 3d at 694, quoting Lara, 331 Ill. App. 3d at 62. The Pearson court concluded that the reasonableness standard included in section 2304 of the Act (15 U.S.C. §§ 2304(a)(1), (a)(4) (1994)) does not apply to limited warranties. Pearson, 349 Ill. App. 3d at 693-94.

We do not disagree with Pearson's conclusion that section 2304 of the Act applies only to full written warranties. We note, however, that plaintiff in the instant case brought her breach of written warranty claim under section 2310(d) of the Act, and that we are called upon to apply that section rather than section 2304. As previously noted, section 2310(e) of the Act states that no action may be brought under section 2310(d) of the Act for failure to comply with any obligation under any written warranty "unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. §

18

2310(e) (2000). Accordingly, we reject defendant's argument that Lara, Bartow, and Pearson, which address the applicability of section 2304 of the Act to written limited warranties, provide a basis for concluding that the Act as a whole, and section 2310(d)(1) in particular, do not apply to limited written warranties.

Finally, we note that jurisdictions outside of Illinois have also recognized that the Act applies to both full and limited warranties. See, e.g., Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912, 918-19 (9th Cir. 2005) (noting that the Act's definition of "written warranty" is not limited to either full or limited warranties and that section 2310(d)(1) "does not limit its application to either full or limited warranties").

Defendant correctly observes that the Act clearly distinguishes between "full" and "limited" warranties. Specifically, section 2303(a)(1) of the Act provides that a warranty which meets the minimum standards set forth in section 2304 of the Act shall be conspicuously designated as a " 'full (statement of duration) warranty,' " and a warranty which does not meet these standards shall be designated as a "limited warranty." 15 U.S.C. § 2303(a)(1) (2000). The standards included in section 2304(a) of the Act provide:

"(1) such warrantor must as a minimum remedy such

consumer product within a reasonable time and without charge, in

the case of a defect, malfunction, or failure to conform with such

written warranty;

(2) *** such a warrantor may not impose any limitation on

the duration of any implied warranty on the product;

19

(3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and

(4) if the product \*\*\* contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product[.]"  15 U.S.C. § 2304(a) (2000).

Defendant asserts that the plain language of the Act makes it clear that the minium standards included in section 2304(a) only apply to "full" warranties and that "limited" warranties are not required to meet these standards.  Defendant further asserts that "it is clear that all of section 2304, including subsection 2304(a)(1), is intended to apply to full warranties only." Defendant contends that in concluding that the statute of limitations began running when it allegedly failed to repair plaintiff's vehicle after a reasonable number of attempts, both this court and the court in Cosman improperly applied the "reasonable number of repair attempts" language included in section 2304(a) to a limited warranty.

We recognize that the standards included in section 2304(a) of the Act must be complied with in a warranty which is designated as a "full warranty," and that a consumer would be entitled to bring an action under the Act based on the failure to comply with such a standard in a warranty designated as a "full warranty."  We also recognize that a consumer would not be

20

entitled to bring an action for violation of the standards included in section 2304(a) if he received a warranty designated as a "limited warranty." We note, however, that in the instant case plaintiff's complaint did not allege defendant violated section 2304(a) by giving a "full" warranty which failed to comply with one of the standards listed in that section. Rather, plaintiff brought the subject claim under section 2310(d)(1) of the Act based on defendant's alleged failure to comply with an obligation to repair under a limited written warranty. Specifically, plaintiff's complaint alleged breach of the promise to repair included in the limited written warranty provided by defendant. In applying section 2310(d)(1), we were called upon to determine when the alleged breach of this repair warranty occurred. In making this determination, we did not apply section 2304(a)(4) to the limited warranty at issue to conclude that the warranty violated that section as a violation of that section was not alleged. Rather, in discussing the Cosman analysis, we noted that Cosman looked to section 2304(a)(4) to inform its decision as to when a breach of a repair warranty occurred. We followed Cosman, agreeing with its conclusion that the UCC does not include promises to repair within its definition of warranty, and that therefore the provisions of the Act governed.

Finally, as previously noted in this modified opinion and as pointed out by plaintiff in her response to defendant's petition for rehearing, the plain language of section 2310(e) of the Act supports our conclusion that a breach of a repair warranty under section 2310(d)(1) occurs when the warrantor fails to successfully repair the product after a reasonable number of attempts during the period of the written warranty. This language provides that no action may be brought under section 2310(d) unless the person obligated under warranty is afforded a "reasonable

opportunity to cure" (15 U.S.C. § 2310(e) (2000)) and thus reflects that the right to bring a breach of a written repair warranty action under section 2310(d) cannot accrue before the warrantor has had a reasonable opportunity to repair or cure the defect in question. Accordingly, based upon the foregoing discussion, we deny the petition for rehearing's request that we affirm the trial court's entry of summary judgment.

II. Breach of Implied Warranty of Merchantability (Count II)

Plaintiff also contends the trial court improperly dismissed her claim for breach of implied warranty of merchantability based on its conclusion that the claim was barred by the statute of limitations. Count II of plaintiff's complaint asserts breach of the implied warranty of merchantability under the Act as defined under section 2301(7) of the Act (15 U.S.C. § 2301(7) (2000)) and alleges the fuel leak which defendant failed to adequately repair rendered plaintiff's car "unmerchantable and thereby not fit for the ordinary and essential purpose for which the [car] was intended and as represented by [defendant]."

The Act provides that actions predicated on a breach of an implied warranty of merchantability may arise only under state law. Mekertichian v. Mercedes-Benz U.S.A., L.L.C., 347 Ill. App. 3d 828, 831 (2004), citing 15 U.S.C. § 2301(7) (1994). Illinois state law for breach of implied warranty of merchantability actions is provided in section 2-314 of the UCC. 810 ILCS 5/2-314 (West 2002). Under section 2-314, "[a]n implied warranty of merchantability is created in a contract for the sale of goods, unless modified or excluded, 'if the seller is a merchant with respect to goods of that kind.' " Lipinski v. Martin Kelly Oldsmobile, Inc., 325 Ill. App. 3d 1139, 1149 (2001), quoting 810 ILCS 5/2-314(1) (West 1992). "To be

merchantable, goods 'must be at least such as *** are fit for the ordinary purposes for which such goods are used.' " Lipinski, 325 Ill. App. 3d at 1149, quoting 810 ILCS 5/2-314(c)(2) (West 1992). "An implied warranty of merchantability applies to the condition of the goods at the time of sale and is breached only if the defect in the goods existed when the goods left the seller's control." Lipinski, 325 Ill. App. 3d at 1150. "In order to prove a breach of an implied warranty of merchantability, plaintiff must prove that [the car] was defective and that the defect(s) existed when the car left defendant's control." Alvarez v. American Isuzu Motors, 321 Ill. App. 3d 696, 702-03 (2001).

"In order for a plaintiff to file a claim for economic damages under the UCC for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller." Mekertichian, 347 Ill. App. 3d at 832, citing Szajna v. General Motors Corp., 115 Ill. 2d 294, 311 (1986), and Rothe v. Maloney Cadillac, Inc., 119 Ill. 2d 288, 292 (1988). "This means that 'the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller.' " Mekertichian, 347 Ill. App. 3d at 832, quoting Rothe, 119 Ill. 2d at 292. Thus, under the UCC, plaintiff would only have a cause of action for breach of implied warranty of merchantability against McGrath Buick Nissan, the entity from which she purchased the car, and not against defendant.

However, the supreme court has relaxed the privity requirement in cases where (1) the manufacturer extended a written warranty with the product and (2) a consumer subsequently brought an action against a manufacturer pursuant to the Act. Mekertichian, 347 Ill. App. 3d at 832, citing Szajna, 115 Ill. 2d at 315-16, and Rothe, 119 Ill. 2d at 294-95. In these cases,

"vertical privity will be deemed to exist with respect to that consumer, enabling him to file an action for breach of implied warranty [against the manufacturer] as well. " Mekertichian, 347 Ill. App. 3d at 832, following Szajna, 115 Ill. 2d at 315, and Rothe, 119 Ill. 2d at 294-95.

We recognize that federal courts have criticized and declined to follow this ruling articulated by the supreme court in Szajna and subsequently followed in Rothe. See, e.g., Kutzler v. Thor Industries, Inc., No. 03 C 2389 (N.D. Ill. July 14, 2003); Kowalke v. Bernard Chevrolet, Inc., No. 99 C 7980 (N.D. Ill. March 23, 2000). However, as noted in Mekertichian, pursuant to the doctrine of *stare decisis*, Illinois Supreme Court decisions regarding state privity requirements under the Magnuson-Moss Act are binding on all Illinois courts where the United States Supreme Court has not addressed the issue. Mekertichian, 347 Ill. App. 3d at 834-36. We do not undertake an independent review of the rulings in Szajna and Rothe, as the principle of *stare decisis* requires us to follow decisions rendered by the Illinois Supreme Court. Dekelaita v. Nissan Motor Corp. in U.S.A., 343 Ill. App. 3d 801, 815 (2003). We follow the ruling articulated in Szajna and followed in Rothe that, under the Act, the extension of a written warranty to the consumer by a warrantor establishes privity between the consumer and the warrantor which, although limited in nature, is sufficient to support an implied warranty under the UCC. Szajna, 115 Ill. 2d at 315-16; Rothe, 119 Ill. 2d at 294-95. Accordingly, because defendant provided a written warranty with the Dodge Neon, we deem it to be in vertical privity with plaintiff and thus reject defendant's argument that its status as the Neon's manufacturer rather than as plaintiff's seller precluded plaintiff's implied warranty claim.

We next address the issue of whether the statute of limitations barred plaintiff's claim for

breach of implied warranty of merchantability against defendant.  As previously noted, section 2-725 of the UCC provides the statute of limitations governing breach of warranty claims under the Act and states in relevant part:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued.
>
> ***
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  *A breach of warranty occurs when tender of delivery is made ***.*" (Emphasis added.)  810 ILCS 5/2-725 (West 2000).

Plaintiff and defendant agree that the statute of limitations on her implied warranty of merchantability claim began to run upon "tender of delivery."  They disagree, however, regarding which tender of delivery started the running of the statute of limitations on plaintiff's claim.

Plaintiff contends that the four-year statute of limitations for breach of the implied warranty of merchantability on secondhand goods begins to run on the date the goods are delivered to the secondhand buyer.  Thus, plaintiff argues, the statute began running when she received delivery of the Neon on June 20, 1998, and accordingly her May 2001 complaint was timely filed.

Defendant contends that to the extent a purchaser of a secondhand car may assert an implied warranty of merchantability claim against the car's manufacturer, the statute of

25

limitations begins to run, not upon the delivery of the car to the secondhand buyer, but upon the date the car is delivered to the consumer who originally bought it as new. Thus, defendant argues, the four-year statute of limitations on plaintiff's implied warranty of merchantability claim began running when the Neon was tendered to and put into service by its original buyer on June 24, 1996, and accordingly her May 2001 complaint was not timely filed.

To support her contention that the statute of limitations on her implied warranty claim began running on the date the car was delivered to her, plaintiff relies upon Lipinski. Plaintiff's reliance on Lipinski is misplaced.

In Lipinski, the plaintiff bought a used car and a service contract from a dealership. Lipinski, 325 Ill. App. 3d at 1142. Two years later, when the car was five years old, the plaintiff filed an action pursuant to the Act alleging breach of the implied warranty of merchantability against the dealership which sold him the car. Lipinski, 325 Ill. App. 3d at 1142-43. The dealership filed a motion to dismiss the implied warranty claim, contending that the statute of limitations for breach of implied warranty on secondhand goods starts to run from the date the goods are delivered as new, and that the plaintiff's claim, which was filed more than four years after the goods were delivered as new, was thus untimely. Lipinski, 325 Ill. App. 3d at 1143, 1149. The trial court granted the motion, and the plaintiff appealed. Lipinski, 325 Ill. App. 3d at 1143.

The appellate court reversed the trial court, holding that the plaintiff's right to bring an implied warranty of merchantability claim against the dealership accrued, pursuant to section 2-725 of the UCC, when the dealership delivered the car to him. Lipinski, 325 Ill. app. 3d at 1151.

26

In support of its holding, the court reasoned:

> "[T]he purchaser of used goods should have the same protection as
> the purchaser of goods when new and be able to bring his case to
> the trier of fact for resolution within four years from the time of
> delivery.  To deny a subsequent purchaser of a car the same four-
> year period of limitations accorded to the purchaser of the car
> when new would defeat the consumer protection purposes of both
> the Magnuson-Moss Act and the Uniform Commercial Code."
> Lipinski, 325 Ill. App. 3d at 1151.

Lipinski makes clear that the fact that a consumer buys a used good rather than a new one does not negate that consumer's right to bring an implied warranty of merchantability claim *against his seller* within four years.  Indeed, in accordance with Lipinski, we recognize that plaintiff's right to bring an implied warranty of merchantability claim against her seller, McGrath Buick Nissan, accrued on the date McGrath delivered the Neon to her and that the statute of limitations on her claim thus began running on that date.  In the instant case, however, plaintiff is seeking relief under an implied warranty of merchantability theory, not from her seller, but from the manufacturer of the Neon.  The Lipinski court did not address when the statute of limitations begins running on such a claim.

In Cosman, this court did address when a breach of implied warranty of merchantability claim against a manufacturer accrued and found that the statute of limitations began running when the vehicle was delivered as new.  Cosman, 285 Ill. App. 3d at 257 (dismissing plaintiff's

implied warranty of merchantability claim against manufacturer). We recognize that the plaintiff in Cosman bought the vehicle new, rather than secondhand. We do not, however, believe that the court's decision in Cosman would have been any different had the vehicle been sold secondhand to the plaintiff in that case.

Indeed, a review of what an implied warranty of merchantability actually promises and what a claimant must prove to establish a breach of such a warranty reflects that when the buyer of secondhand goods brings an implied warranty of merchantability claim against a manufacturer, "tender of delivery" refers to the delivery made to the consumer who originally bought those goods as new. "Under section 2-725(2) of the [Code], an implied warranty of merchantability only applies to the condition of the goods at the time of sale - not to their future performance." Cosman, 285 Ill. App. 3d at 257; Lipinski, 325 Ill. App. 3d at 1150. A manufacturer breaches the implied warranty of merchantability only if a defect exists in the manufacturer's goods when they leave its control. See Alvarez, 321 Ill. App. 3d at 702-03. Thus, plaintiff's claim for breach of implied warranty of merchantability against defendant manufacturer implicates the condition of the car when it left defendant manufacturer's control, not the condition of the car when it left the seller's control.

Although plaintiff did not enter into a contract with defendant to buy the Neon and did not actually accept delivery of it from defendant, she is deemed under Szajna to be in privity with defendant. Szajna, 115 Ill. 2d at at 315. This "privity" is based upon the written warranty that was provided by defendant and delivered to the first consumer who bought the car as new on June 24, 1996. Consistent with Szajna, we conclude that plaintiff's right to bring a breach of

28

implied warranty action against defendant derives from and cannot exceed the original consumer's right to bring such an action.

Here, the Neon was delivered to the first consumer who bought the car as new on June 24, 1996, and thus we conclude that the four-year statute of limitations on plaintiff's claim for breach of implied warranty of merchantability began to run on that date. Because plaintiff filed her action in May 2001, more than four years after that date, we find that count II of plaintiff's complaint was barred by the statute of limitations.

Plaintiff argues that construing section 2-725(2) of the UCC to mean that a cause of action for breach of implied warranty of merchantability against a manufacturer accrues on the date the secondhand goods are originally delivered as new "would lead to an absurd situation where the statute of limitations on plaintiff's claim would have accrued before plaintiff had any right to take judicial action." Plaintiff's argument is not persuasive. As noted above, plaintiff could have brought an implied warranty of merchantability claim under the Act against her seller (McGrath Buick Nissan), based upon the condition of the Neon when it left the seller's control, during the four years following its delivery to her. See Lipinski, 325 Ill. App. 3d at 1151. To prevail under such a claim, plaintiff would have been required to establish that a defect which rendered the Neon unfit existed at the time it left her seller's control. In contrast, plaintiff's right to bring an implied warranty of merchantability claim against defendant, a manufacturer, derives from the original consumer's right to bring such an action. To prevail under this claim, plaintiff, like the original consumer who bought the Neon as new, would be required to establish that the Neon was not fit for its ordinary purpose when it left the manufacturer's control and would have

1-03-1402

four years from the date the car was delivered to the original consumer to bring her action.


### III.  Revocation (Count III)

Count III of plaintiff's complaint alleges the Neon was substantially impaired and seeks revocation of acceptance pursuant to section 2310(d) of the Magnuson-Moss Act (15 U.S.C. § 2310(d) (2000)).  Plaintiff contends on appeal that the trial court should have recognized her claim for revocation because the Magnuson-Moss Act confers upon consumers the ability to recover equitable relief.  In response, defendant asserts that revocation is not available against manufacturers.  Our research has revealed no Illinois cases on this issue.  However, the United States District Court for the Northern District of Illinois has addressed this topic several times.

Section 2310(d)(1) of the Magnuson-Moss Act, upon which plaintiff's claim for revocation is based, provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. §2310(d)(1) (1994).

The United States District Court for the Northern District of Illinois has found repeatedly that a plaintiff's request for revocation of acceptance under section 2310(d)(1) may be based on a manufacturer's failure to comply with either a written warranty or an implied warranty.  See Hamdan v. Land Rover North America, Inc., No. 03 C 2051 (N.D. Ill. August 8, 2003); Larry J. Soldinger Associates, Ltd. v. Aston Martin Lagonda of North America, Inc., No. 97 C 7792 (N.D. Ill. September 13, 1999); Jones v. Fleetwood Motor Homes, 127 F. Supp. 2d 958, 962

30

1-03-1402

(N.D. Ill. 2000) (hereinafter <u>Jones II</u>), citing <u>Jones v. Fleetwood Motor Homes</u>, No. 98 C 3061

(N.D. Ill. October 29, 1999) (hereinafter <u>Jones I</u>) ;  See also <u>Schimmer v. Jaguar Cars, Inc.</u>, No.

03 C 1884 (N.D. Ill. July 2, 2003) ("It is clear that the Magnuson-Moss Act provides for

revocation of acceptance as a remedy against a warrantor-manufacturer"), *vacated on other*

*grounds*, 384 F.3d 402 (7th Cir. 2004).

Defendant emphasizes that in <u>Kutzler v. Thor Industries Inc.</u>, No. 03 C 2389 (N.D. Ill.

July 14, 2003), the United States District Court for the Northern District of Illinois held that

revocation of acceptance under section 2310(d) of the Magnuson-Moss Act is not an available

remedy against nonselling manufacturers.  See also <u>Smith v. Monaco Coach Corp.</u>, 334 F. Supp.

2d 1065, 1070 (N.D. Ill. 2004) (agreeing with <u>Kutzler</u> that revocation is not available to

consumer seeking relief against non-selling manufacturer).  We are mindful of <u>Kutzler</u> and

<u>Smith</u>, but elect to adopt the reasoning and holdings of <u>Hamdan</u>, <u>Soldinger</u>, <u>Jones I</u>, and <u>Jones II</u>

instead.

In the context of this case, plaintiff's claim for revocation may be based on her claim of

breach of written warranty.  Revocation, *i.e.*, return of the vehicle and a refund of the amounts

paid, is a *possible* form of equitable relief should plaintiff succeed at trial on count I for breach

of written warranty.  <u>Jones I</u>, slip op. at ___.   While we conclude that the Mangnuson-Moss Act

permits plaintiff to seek revocation, we take no position as to whether revocation should actually

be granted in the instant case since the appropriateness of such a remedy may not be determined

prior to the presentation of evidence at trial.  See <u>Jones II</u>, 127 F. Supp. 2d at 967 (enforcement

of the right to a refund under the Act is an equitable remedy which requires consumer to show

31

1-03-1402

substantial impairment of the product's value and that no adequate remedy at law exists).

Accordingly, summary judgment should not have been granted to defendant on count III.


CONCLUSION

For the reasons previously discussed, we reverse the trial court's entry of summary judgment on counts I and III, we affirm its entry of summary judgment on count II, and we remand this case for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GALLAGHER, P.J., and TULLY, J., concur.

1-03-1402