SHANNON PEARSON, Plaintiff-Appellant, v. DAIMLERCHRYSLER COR-
PORATION, Defendant-Appellee.—ANTHONY ZENARI, Plaintiff- Appellant,
v. DAIMLERCHRYSLER CORPORATION, Defendant-Appellee.

First District (4th Division)   Nos. 1—02—3051, 1—02—3402 cons.

Opinion filed March 31, 2004.—Rehearing denied July 12, 2004.—Modified
opinion filed July 22, 2004.

689

Krohn & Moss, Ltd., of Chicago (Adam J. Krohn, Gregory H. Moss, and Scott M. Cohen, of counsel), for appellants.

Sanchez & Daniels, of Chicago (Timothy V. Hoffman and Andrew P. Rice, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

In docket number 1—02—3402, plaintiff, Anthony Zenari, appeals from a judgment entered in favor of defendant, DaimlerChrysler Corporation, arguing that the circuit court erred in refusing to give his tendered jury instruction regarding the elements of a breach of express limited warranty claim under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Act or the Act) (15 U.S.C. § 2301 *et seq.* (2000)). In docket number 1—02—3051, plaintiff, Shannon Pearson, appeals from the circuit court's grant of summary judgment in favor of defendant, DaimlerChrysler Corporation. Pearson had sued for breach of implied and express warranties under the Act.

Docket No. 1—02—3402

Zenari purchased a 2000 Plymouth Neon on August 26, 2000. On December 29, 2000, Zenari filed his complaint alleging that the Neon's

engine was defective and that defendant had failed to repair the engine despite at least four attempts to do so. Zenari set forth claims for both breach of express written warranty and breach of the implied warranty of merchantability under the Act. The express warranty was defendant's "Basic Limited Warranty," a standard automobile repair and replace warranty, which promised to pay for "all parts and labor needed to repair any defective item on your vehicle that was supplied by [defendant]—that is defective in material, workmanship, or factory preparation."

Zenari offered the following jury instruction on the elements of proof for breach of express warranty:

"In order for the Plaintiff to prove that the Defendant *** breached its written warranty, you must find:

1) the existence of a defect in the operation of the vehicle;

2) that the defect resulted from factory-supplied material or workmanship;

3) that the Plaintiff presented the vehicle to Defendant's authorized dealers with the request that the defect be repaired;

4) that the Defendant was unable to repair the vehicle after a reasonable number of attempts."

Defendant offered the following instruction on the elements of proof:

"The Plaintiff *** has the burden of proving each of the following propositions:

1) the terms of the warranty given with the purchase of the vehicle;

2) the failure or failures of the warranted parts;

3) a demand upon the Defendant to perform under the terms of the warranty;

4) a failure of the Defendant to do so;

5) compliance of the terms of the warranty by the Plaintiff; and

6) damages resulting therefrom.

If you find from your consideration of all the evidence that each of these propositions have been proved, then you must decide whether the Defendant has breached its written limited warranty. But if, on the other hand, you find from your consideration of all the evidence, that any of these propositions has not been proved, then your verdict should be for the Defendant."

Defendant cited *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 745 N.E.2d 627 (2001) (*Hasek*), as support for this instruction. Over Zenari's objection, the circuit court gave defendant's instruction.

Following a jury trial, judgment was entered in favor of defendant on the express warranty claim. Zenari's motion for a new trial, raising only the instruction issue, was denied.

## Docket No. 1—02—3051

On November 17, 1999, Pearson leased a new 2000 Plymouth Voyager manufactured and distributed by defendant. Defendant supplied Pearson with a standard materials and workmanship written warranty that provided defendant would repair or replace any defective part within three years or 36,000 miles.

Pearson filed a complaint alleging breach of express written warranty, breach of implied warranty, and revocation of acceptance under the Act. Pearson alleged that she brought the Voyager to defendant's authorized service dealer on several occasions for various defects, "including but not limited to: a. Defective air conditioning system ***; b. Defective fuel system as evidenced by poor fuel mileage ***; c. Defective steering system as evidenced by noise and vibration emanating from the steering column ***; and d. Defective electrical system as evidenced by the radio malfunctioning, inoperable windows and the childproof locks malfunctioning." Pearson further alleged that "[a]fter a reasonable number of attempts to cure the defects and nonconformities *** [defendant] was unable and/or has failed to repair the defects, as provided in [defendant's] warranty."

The repair records, depositions of Pearson and her fiancé Jeffrey Parenti, and the reports of Pearson's and defendant's experts reveal the following facts.

Pearson first sought repairs to the steering system on July 17, 2000, when she complained of a noise emanating from the steering column-dash area. On July 25, 2000, Pearson again sought repairs because the steering column began to "pull and jerk to one side." The Voyager was again brought in on November 9, 2000, because the steering was pulling left. Pearson testified via deposition that at the time of her deposition on February 28, 2001, she had just noticed the steering pulling again. She testified at the September 27, 2001, arbitration, however, that the only problem she was still having with the Voyager was the poor gas mileage. Parenti testified via deposition that as of December 2000 or January 2001 there were no problems with the steering.

Pearson's expert, Phillip J. Grismer, stated in his report that while road testing the Voyager on November 4, 2000, he noticed a condition "consistent with a defective steering rack and pinion assembly, defective suspension geometry, defective ball joints, defective tie rod ends, defective strut assemblies." Defendant's expert, Dan Baker, inspected the Voyager on April 23, 2001, and found no problems with the steering.

Pearson described the poor gas mileage as an ongoing problem with the Voyager. She sought repairs for that problem on May 3, 2000,

July 17, 2000, July 25, 2000, October 10, 2000, November 9, 2000, and January 29, 2001. Parenti stated that the poor gas mileage was the only remaining problem with the Voyager as of January 2001. Grismer concluded that "the fuel consumption of this vehicle can be proven to a very poor 12 miles per gallon. This condition is consistent with defective engine, defective transmission, defective engine management system, defective fuel system, defective ignition system." Baker stated in his report that "the mileage obtained during the road test was within 10% of the EPA highway rating. This vehicle is capable of obtaining the EPA ratings published by the EPA." He testified at the arbitration hearing that the EPA (Environmental Protection Agency) estimated mileage for this vehicle was 18 miles city and 25 miles per gallon highway. He further stated that based upon his tests the Voyager complied with the EPA (Environmental Protection Agency) estimated mileage.

Pearson sought repair of the Voyager's air conditioning system on May 3, 2000, July 17, 2000, July 25, 2000, and October 10, 2000. Grismer stated in his report that "the air conditioner system performed without criticism during the inspection." Baker stated in his report that "the a/c system functioned normally."

Pearson also sought repairs at various times for problems with the child locks not disengaging, the driver's side window not rolling up, the radio, and the passenger window sticking. Pearson testified that after the July 25, 2000, repair visit there were no further problems with the radio. She further stated that as of the date of her deposition there were no problems with the radio, the windows, or the child locks. Parenti testified that as of January 2001, the only remaining problem with the Voyager was the poor gas mileage.

Pearson sought repair of the brakes on October 10, 2000, November 9, 2000, and January 29, 2001. At the time of her deposition, Pearson stated that the brakes were still a problem, but a few months later at the arbitration hearing she stated that the only remaining problem with the Voyager was the poor gas mileage. According to Parenti, as of January 2001, there was no problem with the brakes. Baker found no problem with the brakes. Grismer found that "the brake system pulsates while stopping and exhibits a loud grind noise from the front wheels, that is present during most brake applications. The brakes exhibit a constant pulsation in the brake pedal and a vibration throughout the vehicle as a result of the pulsation, when braking."

Pearson stated that all repairs were paid for by the warranty. Parenti stated that he and Pearson use the Voyager on a regular basis. Pearson drives the car 150 miles round-trip to work two or three times per week.

Defendant successfully moved for summary judgment. On September 4, 2002, the circuit court entered an order stating:

"IT IS HEREBY ORDERED:

1) That this matter is entered and continued;

2) That the court finds that [Pearson's] vehicle has no existing defects that are stated in complaint or of which have been brought in for service except for complaint regarding fuel mileage which this court has determined is not a defect;

3) That the court reserves ruling regarding whether six (6) repair visits or attempts to repair is considered or deemed to be reasonable or if that is an issue that shall be determined by a jury; and

4) This matter is set for hearing on item #3 (above) on September 18, 2002."

On September 26, 2002, the court entered a second order stating:

"It is hereby ordered that Defendant DaimlerChrysler Corp.'s Motion for Summary Judgment is granted and disposed of in its totality."

Pearson appeals both the September 4 and September 26, 2002, orders.

I

The main question posed by both appeals is whether Illinois recognizes a reasonableness standard in breach of express limited warranty cases. Specifically, under a standard automobile repair and replace warranty, is the warrantor required to fix the automobile within a reasonable time or a reasonable number of attempts?

■ The Magnuson-Moss Act creates civil actions for consumers in state or federal courts when suppliers, warrantors, or service contractors violate the provisions of the Act. 15 U.S.C. § 2310(d)(1) (2000). Although the Act does not require any consumer product to be warranted (15 U.S.C. § 2302(b)(2) (2000)), if a manufacturer or supplier chooses to warrant a product, the Act imposes specific minimum federal standards for warranties (15 U.S.C. § 2304(a) (2000)). Section 2303 of the Act (15 U.S.C. § 2303(a) (1994)) requires a warrantor to "clearly and conspicuously" designate a written warranty as either a "full warranty" or a "limited warranty." Section 2304 of the Act (15 U.S.C. §§ 2304(a)(1), (a)(4) (1994)) (section 2304) requires, *inter alia*, that the warrantor provide for repair within a reasonable time at no charge to the consumer and, if the product or part thereof cannot be repaired after a reasonable number of attempts, the buyer must be given the right to a refund or replacement at no charge.

■ In *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 794 N.E.2d 1027 (2003), the appellate court found that limited warranties are not governed by the Act, but by the Illinois Uniform Commercial Code

(UCC) (810 ILCS 5/1—101 *et seq.* (West 2000)). See also *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 722 N.E.2d 227 (1999) (*Sorce*) (holding that the standards set forth in section 2304 of the Act applied only to full warranties); *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 62, 770 N.E.2d 721 (2002) (*Lara*) ("all of section 2304 applies to 'full warranties' only"). Therefore, we must look to the UCC to determine whether a reasonableness standard applies.

Section 2—719(2) of the UCC provides that "[w]here circumstances cause an exclusive or limited remedy [such as repair or replacement] to fail of its essential purpose, remedy may be had as provided in this Act." 810 ILCS 5/2—719(2) (West 2000) (section 2—719(2)). The cases interpreting section 2—719(2) contemplate and impose a reasonableness standard.

In *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388, 261 N.E.2d 1 (1970) (*Adams*), plaintiff claimed defendants, despite their duty to make timely repairs called for by the express limited warranty, took an inordinate amount of time to make the repairs. The appellate court recognized plaintiff had accepted the tractor knowing the manufacturer had limited its liability to repair or replacement of defective parts, but noted that plaintiff could not have made his bargain with the knowledge that defendants would be unreasonable in making good on the warranty. Citing section 2—719(2), the court stated that "[f]ailure of the exclusive remedy provided in the warranty is readily found in the allegation that defendants were wilfully dilatory or careless and negligent in complying with their obligations under the warranty." *Adams*, 125 Ill. App. 2d at 403.

In *Lara*, plaintiff alleged, *inter alia*, breach of a written limited warranty. Prior to filing suit, plaintiff's car had been repossessed due to her failure to make timely payments. It was undisputed that the warranty limited plaintiff's remedies to repair and replacement of defective parts. Defendant argued, therefore, that plaintiff was left with no remedy because she caused the car to be repossessed. The court found that because the Act does not address the exclusion or limitation of consequential damages in limited warranties, the exclusion is governed by the UCC. Plaintiff argued that the exclusion was invalid under section 2—719(2). The court noted that "[a] remedy limitation fails of its essential purpose when a seller unreasonably delays the replacement of the product, refuses to replace it at all, or is unsuccessful in correcting the defects 'within a reasonable time.' "[1] *Lara*, 331 Ill. App. 3d at 62.

---

[1]Defendant contends that the jury was instructed on the *Lara* case. It is impossible to determine if the jury was so instructed as the record on appeal

In *Nowalski v. Ford Motor Co.*, 335 Ill. App. 3d 625, 781 N.E.2d 578 (2002) (*Nowalski*), the appellate court held that the statute of limitations for a breach of warranty claim under the Act was four years from the date of delivery. The court noted that under section 2304(a)(4) of the Act, if the product cannot be repaired after a reasonable number of attempts, the consumer may elect either a replacement or a refund. The court then noted in a footnote that the Second District in *Lara* had held that section 2304 of the Act did not apply to limited warranties and that "[i]n the case of a limited warranty, according to *Lara*, we would rely on UCC cases holding the seller must correct the defects 'within a reasonable time.'" *Nowalski*, 335 Ill. App. 3d at 628 n.3. See also *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 315 Ill. App. 3d 248, 733 N.E.2d 718 (2000) (distinguishing cases where warrantor unreasonably delayed repair or replacement or refused it at all, court found warranty had not failed of its essential purpose where defendant replaced defective parts free of charge); *Dynamic Recycling Services, Inc. v. Shred Pax Corp.*, 210 Ill. App. 3d 602, 569 N.E.2d 570 (1991) (plaintiff entitled to expect defendant to repair or replace within a reasonable time after learning that product did not conform to contract).

A manufacturer does not have an unlimited time or an unlimited number of attempts to repair an automobile; rather, the limited warranty is breached and/or fails of its essential purpose if successful repairs are not made within a reasonable time or within a reasonable number of attempts.

## II

Zenari contends that he is entitled to a new trial because he was prejudiced by the circuit court's refusal to give his tendered jury instruction regarding the elements of a breach of express warranty claim. According to Zenari, the given instruction legally was incorrect because it failed to incorporate the reasonableness standard.

Defendant argues that the instruction was a proper statement of the law citing the following sentence in *Hasek*: "In a suit for damages for breach of a written express warranty, the burden of proof is on the plaintiff to show by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *Hasek*, 319 Ill. App. 3d at 793.

---

does not contain a report of proceedings and the common law record does not contain a written set of jury instructions.

In *Hasek*, plaintiff brought a class action seeking recovery for breach of express warranty under the UCC and the Act alleging that defendant's model years 1991-95 Jeep vehicles with 4.0-liter engines were defective due to an idle knocking noise in the engine. The appellate court affirmed the judgment in favor of defendant, finding that plaintiff had failed to meet his burden of proving that there was a defect in material, workmanship or factory preparation in the engines. The engine noise was not a defect that would trigger the warranty.

*Hasek* is not an appropriate statement of the law in this case. *Hasek* was a class action involving an inherent feature of the vehicles. In an individual breach of warranty case, such as the case *sub judice*, a claimant shows that there was a defect, he gave notice to the warrantor and requested repair, and the warrantor undertook repairs but failed to fix the problem within a reasonable number of attempts. Further, the *Hasek* court's formulation of the elements of a cause of action for breach of express warranty was *dicta* where the basis of the court's holding was that plaintiff failed to prove the existence of a defect which triggered the warranty.

The circuit court's determination as to the instructions to be given to the jury will not be disturbed absent an abuse of discretion. *Dabros v. Wang*, 243 Ill. App. 3d 259, 611 N.E.2d 1113 (1993) (*Dabros*). The test for determining whether the court abused its discretion in instructing the jury is whether, considered as a whole, the instructions are sufficiently clear and fairly and accurately state the applicable law. *Dabros*, 243 Ill. App. 3d at 267. Reversal is warranted where the erroneous instruction clearly misled the jury and resulted in prejudice to the appellant. *Amstar Corp. v. Aurora Fast Freight*, 141 Ill. App. 3d 705, 490 N.E.2d 1067 (1986).

■ The instruction in the case *sub judice* failed to state the law accurately, as it did not inform the jury that the warrantor was required to fix the automobile within a reasonable time or a reasonable number of attempts. A proper instruction would have informed the jury that to prove defendant breached its written limited warranty, plaintiff had to prove: (1) the existence of a defect in the automobile covered by the warranty; (2) compliance with the terms of the warranty by plaintiff; (3) plaintiff afforded defendant a reasonable opportunity to repair the defect; and (4) defendant was unable to repair the defect after a reasonable time or a reasonable number of attempts.

The circuit court abused its discretion in instructing the jury on the elements of a breach of express warranty claim. Reversal of the judgment on that claim is warranted as the erroneous instruction clearly misled the jury and prejudiced Zenari.

## III

Summary judgment will be granted when the pleadings, depositions, exhibits, and affidavits on file reveal no genuine issue as to any material fact and establish that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2000); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992) (*Outboard Marine*). All evidence must be construed in the light most favorable to the nonmoving party and most strictly against the moving party. *Gatlin v. Ruder*, 137 Ill. 2d 284, 560 N.E.2d 586 (1990). Appellate review of orders granting summary judgment is *de novo*. *Outboard Marine*, 154 Ill. 2d at 102.

Pearson contends that the circuit court erred in granting summary judgment in favor of defendant because factual issues remain regarding whether her problems with the Voyager were resolved within a reasonable time or reasonable number of attempts. Pearson maintains that reasonableness is an issue of fact for the jury that precludes summary judgment.[2]

## A

Defendant first responds that summary judgment properly was granted on the express warranty claim because there is no issue of fact that it satisfied the written warranty obligations by inspecting and repairing the vehicle each time it was brought in for service at no charge to Pearson. According to defendant, Pearson's and Parenti's testimony that as of September 2001, there was no problem with the Voyager other than the poor gas mileage, an unactionable claim, establishes that defendant repaired each alleged problem with the Voyager.[3] Defendant maintains that there is no requirement that repairs be done within a reasonable number of attempts.

As discussed above, Illinois law does require a manufacturer to

---

[2]Defendant argues that Pearson has waived her right to dispute the circuit court's ruling because she failed to present authority or argument regarding the reasonableness issue at the September 26, 2002, hearing. The record on appeal does not contain a report of proceedings; therefore, it is impossible to ascertain what arguments or authority were presented at the September 26, 2002, hearing. Moreover, the reasonableness argument was presented in Pearson's response to defendant's summary judgment motion.

[3]Defendant argues that the poor gas mileage was not an actionable claim. Pearson does not respond to this argument. Defendant first argues that it was not a warranty issue because 49 U.S.C. § 32908(d) (2000) provides that "a disclosure about fuel economy or estimated annual fuel costs under this section does not establish a warranty under a law of the United States or a State."

make successful repairs within a reasonable time or a reasonable number of attempts. The record establishes that as of September 2001, there was no problem with the Voyager other than poor gas mileage. Questions of fact remain, however, regarding whether the repairs were made within a reasonable time or within a reasonable number of attempts. The record reveals that it took at least three attempts to repair the steering system, four attempts to repair the air conditioning system, and three attempts to repair the brakes. Pearson unsuccessfully sought repairs for the poor gas mileage on six occasions. Grismer concluded that the poor gas mileage was consistent with a defective engine, defective transmission, defective engine management system, defective fuel system and defective ignition system. Pearson sought repairs of the Voyager on at least six separate occasions from May 2000 through January 2001.

In *Lara*, the court held that summary judgment improperly was granted in favor of defendant on the express warranty claim because "[i]f the finder of fact concludes that the limited remedy of replacement or repair of defective parts failed of its essential purpose, the express warranty's exclusion of consequential and incidental damages will have no effect and those damages will be available to plaintiff pursuant to the UCC." *Lara*, 331 Ill. App. 3d at 63. Plaintiff tendered the vehicle for repairs 14 times in 2 years for multiple repairs.

The circuit court erred in granting summary judgment in favor of defendant on the breach of express warranty claim.

### B

Defendant also argues that summary judgment was entered properly on the breach of implied warranty claim. Specifically, defendant contends that the Voyager was merchantable.

A product breaches the implied warranty of merchantability if it is not " 'fit for the ordinary purposes for which such goods are used.' " *Alvarez v. American Isuzu Motors*, 321 Ill. App. 3d 696, 702, 749 N.E.2d 16 (2001), quoting 810 ILCS 5/2—314(2)(c) (West 1992). With regard to automobiles, " '[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of

---

Defendant further argues that poor gas mileage is not a defect. In *Hasek*, quoting Black's Law Dictionary 418 (6th ed. 1990), the court defined "defect" as " '[t]he absence of something necessary for completeness or perfection; a deficiency in something essential to the proper use for the purpose for which a thing is to be used.' " *Hasek*, 319 Ill. App. 3d at 791. Both Pearson and Parenti testified that they used the Voyager on a daily basis. Parenti stated that Pearson drove the Voyager 150 miles round-trip to work two or three times a week. According to Parenti, the Voyager is safe and reliable.

defects.' " *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.,* 342 Ill. App. 3d 150, 159, 794 N.E.2d 829 (2003), quoting *Overland Bond & Investment Corp. v. Howard,* 9 Ill. App. 3d 348, 354 (1972).

Citing her expert's testimony, Pearson argues that a fact question remains regarding whether the defects in the Voyager were ever repaired. Pearson's and Parenti's own testimony established, however, that as of September 2001 all problems with the Voyager other than the poor gas mileage were resolved. Both Pearson and Parenti testified that they have used the vehicle on a daily basis. According to Parenti, Pearson drives the Voyager 150 miles round-trip to work two or three times a week. Grismer concluded, however, that the poor gas mileage was consistent with a defective engine, defective transmission, defective engine management system, defective fuel system, and defective ignition system. This evidence creates a question of fact regarding whether the Voyager was in a safe condition and substantially free of defects.

The circuit court erred in granting summary judgment on Pearson's breach of implied warranty claim.

## C

■ Finally, defendant argues that Pearson cannot assert a claim under the Act because she leased the subject vehicle. Defendant has waived this issue by failing to raise it in the circuit court. "[L]ack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court." *Greer v. Illinois Housing Development Authority,* 122 Ill. 2d 462, 508, 524 N.E.2d 561 (1988). See also *Skolnick v. Altheimer & Gray,* 191 Ill. 2d 214, 730 N.E.2d 4 (2000).

Waiver aside, the First District recently held that a lessee of an automobile may bring a cause of action for breach of written and implied warranties under the Act. See *Dekelaita v. Nissan Motor Corp. in USA,* 343 Ill. App. 3d 801, 799 N.E.2d 367 (2003) (*Dekelaita*). The Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1) (2000). A "consumer" is defined as: "[1] a buyer (other than for purposes of resale) of any consumer product, [2] any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and [3] any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service

contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (2000). A person need only meet one of these three prongs in order to qualify as a consumer under the Act. *Dekelaita*, 343 Ill. App. 3d at 807. In *Dekelaita*, the court held that a lessee of a vehicle qualifies as a consumer under the third definition because the lessor assigned the rights of defendant's warranty to the lessee and the lessee was entitled to enforce those rights at least under state law. *Dekelaita*, 343 Ill. App. 3d at 809.

Defendant argues that written and implied warranties only arise under the Act in connection with a sale. Because Pearson leased and did not purchase the Voyager, the warranty was not issued in connection with a sale and therefore her claims must fail. This argument was considered and rejected in *Dekelaita*. Under the Act "written warranty" is defined as:

> "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for promises other than resale of such product." 15 U.S.C. § 2301(6) (2000).

An "implied warranty" is defined as "an implied warranty arising under State law *** in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (2000).

In *Dekelaita*, the court found that the warranty was issued in connection with a sale; the sale between the dealer and the lessor. *Dekelaita*, 343 Ill. App. 3d at 810. The court found that the Act does not limit a "sale" to transactions between the warrantor and the ultimate consumer. *Dekelaita*, 343 Ill. App. 3d at 810. "In the instant case, then, in connection with the sale, the warranty was assigned to the lessees, who are consumers entitled to enforce the Act." *Dekelaita*, 343 Ill. App. 3d at 810. In so holding, the court examined *DiCintio v. DaimlerChrysler Corp.*, 97 N.Y.2d 463, 768 N.E.2d 1121 (2002) (*DiCintio*), relied upon by defendant in the case *sub judice*. In *DiCintio*, the court held that a lessee could not be a consumer because each prong of the definition required a sale. The first prong required the consumer

to be a buyer. As for the second and third prongs, the court determined that both required a "written warranty" or "implied warranty" to be in effect and relied upon the "sale" language in the definitions of written and implied warranties to hold that both prongs required a sale. Because "sale" is not defined in the Act, the court used the UCC definition of sale, the "passing of title," and found that there was no sale and therefore no written or implied warranty and consequently, a lessee could not be a consumer. *DiCintio*, 97 N.Y.2d at 471, 768 N.E.2d at 1124. The *Dekelaita* court found this analysis to be "flawed." *Dekelaita*, 343 Ill. App. 3d at 812. The court determined that the legislative intent was best served by protecting lessees with a broad reading of the definitions of "written warranty" and "implied warranty" and that public policy supported affording long-term automobile lessees the same rights afforded to purchasers. *Dekelaita*, 343 Ill. App. 3d at 812-14.

We follow *Dekelaita* and find that Pearson had standing to bring this action under the Act.

Accordingly, for the reasons set forth above, in docket No. 1—02—3402 the judgment of the circuit court of Cook County on the breach of express warranty claim is reversed and the cause remanded for further proceedings, and the grant of summary judgment in docket No. 1—02—3051 is reversed and the cause remanded for further proceedings.

Reversed and remanded.

QUINN, P.J., and GREIMAN, J., concur.