FIFTH DIVISION
June 30, 2006

No. 1-04-3830

| | | |
|---|---|---|
| KEN MATTUCK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and Cross-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| DAIMLERCHRYSLER CORPORATION, | ) | Honorable |
| | ) | Gregory Wojkowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Ken Mattuck sued defendant auto manufacturer DaimlerChrysler Corporation, alleging breach of written warranty, breach of the implied warranty of merchantability, and revocation of acceptance after he leased a 1999 Jeep Grand Cherokee and experienced braking problems that were not resolved after several attempts at repair. Finding that defendant breached the written and implied warranties, a jury awarded plaintiff $8,500 in damages. The trial court later entered judgment for defendant on the remaining count of revocation of acceptance.

Defendant now appeals the jury's verdict, contending that plaintiff leased the vehicle and that no sale took place that would qualify plaintiff as a "consumer" under section 2301(3) of the Magnuson-Moss Warranty–Federal Trade Commission Improvement Act (the Magnuson-Moss Act or the Act) (15 U.S.C. §2301(3) (2000)). Defendant raises additional reasons that plaintiff was not entitled to recovery for his claims of breach of the written or implied warranties.

Plaintiff has cross-appealed, arguing that a portion of defendant's appeal should be stricken for lack of jurisdiction. For the reasons set forth below, we affirm.

BACKGROUND

On August 31, 1999, plaintiff leased a 1999 Jeep Grand Cherokee, manufactured by defendant, from Automotive Leasing Corporation in Schaumburg. The lease was effective for 5 years and 6 months and allowed plaintiff to drive the vehicle 82,000 miles during that period. Plaintiff received a written 3-year/36,000-mile, bumper-to-bumper warranty. Plaintiff testified that he drove an average of 3,000 miles a month across Illinois, Wisconsin and Indiana for his job as a manufacturing representative and that he logged most of his miles on the highway.

On March 6, 2000, plaintiff brought the vehicle, which had been driven 11,187 miles, to a Jeep dealer for repair because the steering wheel would shake violently when he applied the brakes. Although the front brake rotors were replaced under the warranty, the steering wheel continued to shake. Plaintiff had the vehicle serviced again in May 2000, September 2000, August 2001, September 2001 and May 2002, at which point he had driven it 84,707 miles. The front brake pads and rotors were replaced twice, and the rear brake rotors were replaced on the last service visit. Plaintiff continued to drive the vehicle for six months and another 13,000 miles.

Plaintiff paid for one repair himself (resurfacing the brake rotors); all other repairs were covered under warranty. Plaintiff testified that at the time of trial, he still had possession of the Jeep Cherokee and continued to make the monthly payments under the lease agreement.

1-04-3830

However, plaintiff said he no longer used the vehicle and that it was "sitting in [his] garage."

After dismissing plaintiff's initial complaint, the trial court granted plaintiff's motion to reconsider. Plaintiff filed a second amended complaint, alleging in count I that defendant breached its written warranty under section 2310(d) of the Act (15 U.S.C. §2310(d) (2000)). Count II of the complaint alleged that defendant breached the implied warranty of merchantability as defined in section 2301(7) of the Act (15 U.S.C. §2301(7) (2000)). In count III, plaintiff alleged that the Grand Cherokee's substantial impairments entitled him to revoke his acceptance of the vehicle under section 2310(d) of the Act (15 U.S.C. §2310(d) (2000)).

At trial, plaintiff presented the expert testimony of Thomas Walters, an ASE-certified master technician with more than 20 years of automotive repair experience and training. In November 2000, Walters inspected the Jeep Cherokee, which had been driven almost 35,000 miles. Walters reviewed the vehicle's repair history and stated that the problem was caused by the brake rotors and the way they were "machined." Walters testified the vehicle's value was reduced by 40%, and on cross-examination, he stated that his opinion was based in part on the Kelley Blue Book, which, according to Walters, is a guide to retail purchase value.

DaimlerChrysler presented the testimony of two automotive experts. Allan Loew,[1] an ASE-certified mechanic for about 35 years who performed technical inspections for Chrysler for

---

[1] Mr. Loew's name is spelled differently in the report of proceedings and in defendant's brief. Because the witness did not spell his name for the record, we adopt the spelling used in defendant's brief.

3

eight years, testified that plaintiff's constant driving of the vehicle contributed to the brake problems. Loew testified that he inspected and drove the vehicle at 45,000 miles and again at about 70,000 miles and did not experience shaking in the steering wheel or brake pulsation. Loew testified that the brake rotors on the Jeep were designed to last two years.

Dan Baker, a technical advisor for Chrysler for 30 years, testified that he inspected and drove the Jeep Cherokee at about 87,000 miles and did not experience any brake pulsation or steering wheel movement. Baker said the vehicle handled as he expected and that brake rotor replacement is expected on high-mileage vehicles.

On June 2, 2004, the jury awarded plaintiff $8,500 in damages under counts I and II, which was allocated as $6,000 for breach of warranty and $2,500 for aggravation/inconvenience. The jury awarded no damages to plaintiff for loss of use of the vehicle. As will be explained in more detail later in this opinion, the trial court entered a separate judgment for defendant on count III (revocation of acceptance) more than three months after the jury's verdict.

## ANALYSIS

### I. Jurisdiction

It is first necessary to consider plaintiff's cross-appeal and his motion to strike portions of defendant's appeal because they challenge this court's jurisdiction and, therefore, the court's ability to decide the underlying merits of the case. The crux of plaintiff's cross-appeal is whether defendant's posttrial motion needed to be filed within 30 days of the jury verdict on counts I and II, which was entered June 2, 2004, or within 30 days of when the court entered judgment on

count III (revocation of acceptance) on September 8, 2004.

The trial court entered judgment on the jury's verdict for plaintiff on counts I and II on June 2, 2004. On August 12, the court awarded plaintiff $23,571.80 in attorney fees and costs. On August 24, defendant requested an extension of time to file its posttrial motion, citing the need to prepare a report of proceedings. On September 8, the trial court entered judgment for defendant on count III (plaintiff's revocation of acceptance claim). The court ordered defendant to file its "post-trial motion on all issues, including attorney fees, [within] 30 days, or by October 8, 2004, over plaintiff's objection." Neither the record on appeal nor the report of proceedings indicates why the jury did not reach a verdict on count III of plaintiff's complaint, why the trial court entered judgment for defendant on that count or why that judgment was entered more than three months after the jury verdict on counts I and II. In any event, on October 7, 2004, within the time frame set out in the trial court's September 8 order, defendant filed a posttrial motion challenging the verdict pursuant to section 2-1202 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1202 (West 2000)).

Plaintiff now argues that defendant was required to file its posttrial motion, or seek an extension of time to file such a motion, by July 2, 2004, *i.e.*, within 30 days of June 2, 2004, when the trial court entered judgment for plaintiff on counts I and II. Plaintiff cites section 2-1202(c) of the Code, which states, in pertinent part:

> "Post-trial motions must be filed within 30 days after the entry of judgment *** or within any further time the court may allow within the 30 days or any extensions thereof." 735 ILCS 5/2-1202(c) (West 2000).

1-04-3830

Plaintiff concedes that the June 2 order was not appealable under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)); however, he asserts that the June 2 order constituted a final judgment as to counts I and II, despite the pendency of count III and plaintiff's petition for attorney fees. Defendant responds that section 2-1202(b) of the Code requires all relief to be sought "in a single post-trial motion" and argues that its motion was timely because the final judgment resolving all of plaintiff's claims was not entered until September 8, 2004.

A final judgment is one that disposes of the rights of the parties either with regard to the entire controversy or a definite or separate part thereof. *Djikas v. Grafft*, 344 Ill. App. 3d 1, 8, 799 N.E.2d 887, 893 (2003). However, a judgment is not final where the trial court reserves an issue for further consideration or otherwise manifests an intention to retain jurisdiction for the entry of a further order. *Djikas*, 344 Ill. App. 3d at 8, 799 N.E.2d at 893. The 30-day period for filing of a posttrial motion as described in section 2-1202(c) begins after the court enters a final judgment disposing of all of the issues in a case, even when a previous final judgment was entered as to some counts. *Kral v. Fredhill Press Co.,* 304 Ill. App. 3d 988, 994, 709 N.E.2d 1268, 1271-72 (1999).

Here, although the trial court's order entering judgment on counts I and II of the complaint was final on June 2, 2004, the trial court retained jurisdiction to decide the remaining count and also to consider plaintiff's petition for attorney fees and costs. Moreover, when entering judgment on count III on September 8, 2004, the trial court allowed defendant 30 days from that date to file its posttrial motion "on all issues." Defendant filed its motion within that time period. Therefore, defendant's posttrial motion was timely, and this court has jurisdiction

6

over defendant's appeal.

## II. Plaintiff's Ability to Recover Under the Act as a Lessee

Defendant's first contention on appeal is that plaintiff cannot recover under either warranty theory set forth in his complaint because he leased the vehicle and therefore is not a "consumer" under the Magnuson-Moss Act.

The pertinent section of the Act lists these three descriptions of a consumer:

"[1] a buyer (other than for purposes of resale) of any consumer product, [2] any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product; and [3] any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)."

15 U.S.C. §2301(3) (2000).

Although more than one definition may apply in a particular case, a person must only meet one of those three criteria to qualify as a "consumer" under that section. *Mangold v. Nissan North America, Inc.*, 347 Ill. App. 3d 1008, 1010, 809 N.E.2d 251, 253 (2004); *Dekelaita v. Nissan Motor Corp. in USA*, 343 Ill. App. 3d 801, 807, 799 N.E.2d 367, 370 (2003).

Defendant argues that all three options require that a "sale" occur, and no "sale" took place here because plaintiff leased the vehicle from Automotive Leasing Corporation. Plaintiff does not challenge defendant's assertion that the first definition of "consumer" expressly requires a "buyer" and therefore does not apply to him as a lessee; rather, the parties' arguments center on

the second and third definitions of "consumer."

This court has rejected defendant's position and held that a lessee of a vehicle meets the definition of a "consumer" under the second or third description in section 2301(3).  In *Dekelaita*, 343 Ill. App. 3d at 807, 799 N.E.2d at 370, the court described the three definitions, in order, as describing a "buyer," a "transferee" and someone "otherwise entitled to enforce a warranty."  *Dekelaita* held that a lessee could meet the second definition of a "consumer" because the vehicle was transferred to the lessee during the duration of the implied or written warranty, although *Dekelaita* noted that some courts have excluded lessees from that category because in a lease agreement, no transfer of title occurs.  *Dekelaita*, 343 Ill. App. 3d at 808, 799 N.E.2d at 371, citing, *inter alia*, *DiCintio v. DaimlerChrysler Corp.*, 97 N.Y.2d 463, 768 N.E.2d 1121, 742 N.Y.S.2d 182 (2002).  *Dekelaita* held that even if the second definition did not apply, a lessee would qualify as a "consumer" under the third alternative, which the court described as a "catch-all provision" that only requires the existence of a warranty enforceable under state law.  *Dekelaita*, 343 Ill. App. 3d at 809, 799 N.E.2d at 372.

Additional Illinois cases have followed *Dekelaita* in holding that a lessee of a vehicle meets the definition of a "consumer."  *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 699-700, 813 N.E.2d 230, 239-40 (2004); *Mangold*, 347 Ill. App. 3d at 1010-11, 809 N.E.2d at 253-54.  While *Pearson* did not indicate which definition of "consumer" it found applicable, the court in *Mangold* stated that both the second and third alternatives applied.  *Mangold*, 347 Ill. App. 3d at 1010-11, 809 N.E.2d at 253-54.  In *Mangold*, the plaintiffs leased an Infiniti from a financial services company that bought the car from a Nissan dealer and alleged a breach of

Nissan's written and implied warranties after attempts to repair the car were unsuccessful. *Mangold*, 347 Ill. App. 3d at 1009, 809 N.E.2d at 252. The court held that under the Magnuson-Moss Act, the plaintiffs were entitled to enforce the warranty because the financial services company transferred its warranty rights to the plaintiffs, thus satisfying the second definition of "consumer." *Mangold*, 347 Ill. App. 3d at 1010-11, 809 N.E.2d at 253. For the same reason, *Mangold* held that the plaintiffs also qualified as "consumers" under the third, broader definition in section 2301(3). *Mangold*, 347 Ill. App. 3d at 1011, 809 N.E.2d at 253-54.

While defendant acknowledges *Dekelaita* and similar precedent, it maintains that the second and third definitions of "consumer" in section 2301(3) mention a written warranty.[2]

---

[2] The Act describes "written warranty" as follows:

"(A) any affirmation of fact or written promise made *in connection with the sale* of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time; or

(B) any undertaking in writing *in connection with the sale* by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

Defendant argues that for a written warranty to exist, a sale must take place. The defendant

corporation in *Dekelaita* made the same argument, which the court rejected, stating that under

the third definition of "consumer" in section 2301(3), a lessee meets the description of one who

is entitled to enforce the warranty under the Act or "under applicable State law." 15 U.S.C.

§2301(3) (2000); *Dekelaita*, 343 Ill. App. 3d at 812-14, 799 N.E.2d at 374-76 (discussing the

public policy served by extending the rights of car buyers to consumers who enter into long-term

leases). Furthermore, we find this case indistinguishable from *Mangold*. Therefore, the second

and third definitions of "consumer" under section 2301(3) apply to plaintiff here.

III. Breach of Express Warranty (Count I)

Defendant next argues that plaintiff cannot recover for breach of express warranty under

Count I of his complaint, raising three theories under which judgment for plaintiff on that count

should be reversed. In considering a challenge to the jury's verdict, the standard of review is that

which written affirmation, promise, or undertaking becomes part of the basis of

the bargain between a supplier and a *buyer for purposes other than resale of such product*."

(Emphasis added.) 15 U.S.C. §2301(6) (2000).

the verdict is not disturbed unless contrary to the manifest weight of the evidence. *Snelson v.*

*Kamm*, 204 Ill. 2d 1, 35, 787 N.E.2d 796, 815 (2003). A verdict is against the manifest weight of

the evidence where the opposite conclusion is clearly evident or where the findings of the jury

are unreasonable, arbitrary and not based upon the evidence. *Redmond v. Socha*, 216 Ill. 2d 622,

651, 837 N.E.2d 883, 900 (2005).

### A. Proper Measure of Plaintiff's Damages

Defendant raises several arguments in support of his point that the express warranty was

not breached. Defendant first contends that plaintiff presented no evidence as to his damages,

pointing to his testimony that, despite the repairs, he drove the vehicle almost 100,000 miles

between 1999 and 2002. The jury awarded plaintiff $6,000 in damages for breach of the express

and implied warranties.

The jury was given the following instruction regarding damages:

"If you decide for the Plaintiff on his claim for breach of warranty, you

must fix the amount of money which will reasonably compensate the plaintiff for

all actual damages proximately caused. In calculating Plaintiff's damages, you

should determine that sum of money that will put the Plaintiff in as good a

position as he would have been in if both Plaintiff and Defendant had performed

all their promises under Defendant's written limited warranty and as required by

law under the implied warranty of merchantability.

*The elements of damage claimed by plaintiff in this case are the difference*

*between the value of the vehicle as it was warranted and the value of the vehicle*

11

1-04-3830

*delivered in its defective state and/or incidental/consequential damages.*

       Whether these elements of damages have been proved by the evidence is

for you to determine." (Emphasis added.)

See Illinois Pattern Jury Instructions, Civil, No. 30.01 (2005).

Plaintiff argues that damages in a breach of warranty case are governed by section 2-714(2) of the Illinois Uniform Commercial Code (the UCC), which states that such damages are measured as:

       "the difference at the time and place of acceptance between the value of

the goods accepted and the value they would have had if they had been as

warranted, unless special circumstances show proximate damages of a different

amount." 810 ILCS 5/2-714(2) (West 2000).

The Illinois Supreme Court recently applied this standard in *Razor v. Hyundai Motor America*, No. 98813 (2006) (modified on denial of rehearing), which plaintiff cites as supplemental authority. Plaintiff also points out that defendant raised no objection to the instruction that was given to the jury and, in fact, expressly agreed to it, which the record on appeal establishes. A party waives any objection to a jury instruction by failing to object to it at the instruction conference. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 484, 825 N.E.2d 1246, 1258 (2005). Plaintiff further notes that defendant did not offer an alternative instruction reflecting the theory of damages it now argues should have been used.

Defendant responds that it raised that argument to the trial court in its motion for a

12

directed verdict and at other points during trial. Defendant argues that despite its apparent acquiescence to the instruction that was given, this case did not involve a purchase but rather a lease, which is governed by article 2A of the UCC, and defendant maintains that plaintiff's damages should be assessed by the diminution in the value of the lease, citing section 2A-519 (810 ILCS 5/2A-519 (West 2000)). However, the instruction provided to the jury in this case included the correct test to measure damages for breach of a limited warranty. See *Razor*, slip op. at 24.

Defendant nevertheless maintains that even if the instruction was proper, plaintiff failed to prove that he sustained damages. Defendant argues that plaintiff's expert witness presented conclusory testimony as to the diminished value of plaintiff's lease of the vehicle, and defendant asserts that the repairs made to the vehicle do not definitively establish damages. This argument is discussed in section C below, which analyzes whether defendant breached the express warranty.

## B. "Reasonable Number of Repair Attempts" Instruction

Defendant next contends that the jury was erroneously instructed on the standard to assess a breach of the written warranty on plaintiff's vehicle. Plaintiff alleged in her complaint that the purported defects in the Jeep Cherokee were not resolved after "a reasonable number of attempts," and the jury was instructed that to establish a breach of the written warranty, plaintiff was required to prove, *inter alia*, that a defect existed in the vehicle and that defendant "was unable to repair the vehicle after a reasonable number of attempts." The test for determining

13

1-04-3830

whether the jury was properly instructed is whether, taken as a whole, the jury instructions were clear enough so as not to mislead and whether they fairly and accurately stated the applicable law. *Burmac Metal Finishing Co.*, 356 Ill. App. 3d at 483, 825 N.E.2d at 1257-58.

Defendant argues that the "reasonable number of repair attempts" standard does not apply here because this case involved a limited warranty, as opposed to a full warranty. The Magnuson-Moss Act creates minimum federal standards for product warranties and provides a cause of action for a consumer against a manufacturer, supplier, warrantor or service contractor for a breach of warranty. 15 U.S.C. §§ 2310(d)(1), 2304(a) (West 2000); see *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 483-84, 794 N.E.2d 1027, 1030 (2003). Defendant argues that under the Magnuson-Moss Act, the "reasonable number of repair attempts" standard only applies to full warranties, not to limited warranties.[3]

This court recently addressed this argument in *Mydlach v. DaimlerChrysler Corp.*, 364 Ill. App. 3d 135, 150-51 (2005) (as modified on denial of rehearing), rejecting the position of

_____

[3] Plaintiff does not dispute that a limited warranty was in effect here. We again note the Illinois Supreme Court's recent opinion in *Razor*, which plaintiff cited as supplemental authority on the issue of damages. In *Razor*, the supreme court noted that the warranty at issue in that case was a limited warranty and stated that "the Act does not set out requirements for limited warranties." *Razor*, slip op. at 7. We acknowledge that observation by the court but do not *sua sponte* read that isolated statement to indicate that portions of the Act, such as section 2310(d) in particular, do not apply to limited warranties.

14

this same corporate defendant that the UCC, and not the Act, applied to the plaintiff's claims for a breach of an express limited warranty. *Mydlach* held that a plaintiff's action accrues under the Act for breach of an express limited warranty to repair a vehicle when the defendant fails to repair the vehicle in a reasonable number of attempts. *Mydlach*, 364 Ill. App. 3d at 146.

In support of the contention that the "reasonable number of repair attempts" standard applies only to full warranties, defendant calls our attention to several cases including *Pearson*, *Bartow* and *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 770 N.E.2d 721 (2002). We discussed each of those cases in *Mydlach* and found that they did not support the defendant's overall proposition that the Act does not apply to limited warranties. *Mydlach*, 364 Ill. App. 3d at 149-50. In particular, *Mydlach* noted the observation in *Lara* that a plaintiff's claim for breach of an express limited warranty can be brought under section 2310(d)(1). *Mydlach*, 364 Ill. App. 3d at 149. Accordingly, as to defendant's assertion that the jury was wrongly instructed, we conclude that the "reasonable number of attempts" standard accurately stated the applicable law.

## C. Evidence of Breach of Express Warranty

Defendant next contends that plaintiff did not meet the test for breach of a limited warranty set out in *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 793, 745 N.E.2d 627, 638 (2001), which requires a plaintiff to prove: (1) the terms of the warranty; (2) the failure or failures of warranted parts; (3) a demand upon the defendant to perform under the warranty; (4) the failure of the defendant to do so; (5) the plaintiff's compliance with the terms of the warranty; and (6) damages resulting therefrom. Defendant argues that the warranty was not

breached because plaintiff drove the vehicle almost 100,000 miles and that the vehicle was serviced each time plaintiff requested a repair.

The testimony established that plaintiff had the vehicle serviced no less than six times and that the steering wheel shook violently when he applied the brakes. The brake rotors were repaired or replaced at least four times between March 2000 and May 2002. Whether a breach of express warranty has occurred and whether the repairs were made in a reasonable number of attempts are questions of fact for the jury to resolve where the evidence is conflicting or reasonably susceptible of more than one inference. 77A C.J.S. *Sales* § 305 (1994); see also *Neppl v. Murphy*, 316 Ill. App. 3d 581, 591, 736 N.E.2d 1174, 1183 (2000).

Defendant contends that plaintiff must prove an "actual loss" or "measurable damages resulting from the breach," and defendant argues that the fact that plaintiff's vehicle was repaired does not mean that plaintiff sustained any damages, pointing out that the majority of the repairs were covered under plaintiff's warranty. Plaintiff again responds that defendant forfeited any argument about the proper measure of damages by failing to object to the trial court's instruction (discussed in section A).

Damages are an essential element of a breach of warranty claim. *Kim v. Mercedes-Benz U.S.A., Inc.*, 353 Ill. App. 3d 444, 460, 818 N.E.2d 713, 726 (2004). "The ascertainment and assessment of damages is a question of fact for the jury; although the amount may not be speculative, it need not be proved with mathematical certainty." *F.L. Walz, Inc., v. Hobart Corp.*, 224 Ill. App. 3d 727, 733, 586 N.E.2d 1314, 1319 (1992). This court recently affirmed that the diminished value of a product is a compensable injury in a breach of warranty claim.

*Dewan*, 363 Ill. App. 3d at 369, 842 N.E.2d at 760-61. Here, plaintiff's expert, Thomas Walters, testified that he relied on the Kelley Blue Book, which measures the retail value in terms of a car or truck's purchase price, in opining that the brake defects reduced the vehicle's value by 40%. The monetary value of the jury's award for breach of the express and implied warranties – $6,000 – was in line with that assessment. Having concluded that the jury was properly instructed on how to weigh plaintiff's damages, we decline to disturb the damage award.

IV. Breach of Implied Warranty of Merchantability (Count II)

Defendant's final assertions on appeal involve the implied warranty of merchantability. Defendant argues that contrary to the judgment for plaintiff on that count, the vehicle was clearly merchantable, again citing the number of miles plaintiff was able to drive the vehicle despite the undisputed brake problems.

A product breaches the implied warranty of merchantability if it is not fit for the ordinary purpose for which such goods are used. *Pearson*, 349 Ill. App. 3d at 698, 813 N.E.2d at 239. In the case of automobiles, this standard means that the vehicle "should be in a safe condition and substantially free of defects." *Pearson*, 349 Ill. App. 3d at 698, 813 N.E.2d at 239; see also *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.*, 342 Ill. App. 3d 150, 159, 794 N.E.2d 829, 836 (2003). An implied warranty of merchantability applies to the condition of the goods at the time of sale and is breached only if the defect in the goods existed when the goods left the seller's control. *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1150,

1-04-3830

759 N.E.2d 66, 75 (2001).

Defendant asserts that plaintiff was able to drive the Jeep Cherokee for almost 100,000 miles and that the vehicle therefore was fit for its ordinary purpose. In response, plaintiff points out the Jeep Cherokee's numerous malfunctions and notes the standard set out in *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill. 2d 570, 357 N.E.2d 449 (1976), that a defect can be proved inferentially by direct or circumstantial evidence. A breach of an implied warranty of merchantability may occur where the warrantor has unsuccessfully attempted to repair or replace the defective parts. *Check*, 342 Ill. App. 3d at 159, 794 N.E.2d at 836. Plaintiff presented evidence that he had the brake rotors repaired or replaced numerous times but that the problem was never completely resolved. Whether an implied warranty has been breached is to be decided by the trier of fact. 77A C.J.S. *Sales* § 305 (1994); *Check*, 342 Ill. App. 3d at 159, 794 N.E.2d at 836. The fact that the jury chose to lend greater weight to the testimony presented by plaintiff than that of defendant's experts does not mandate reversal by this court. See *Jackson v. H. Frank Olds, Inc.*, 65 Ill. App. 3d 571, 578, 382 N.E.2d 550, 555 (1978).

Defendant next contends that even if the evidence established that the implied warranty of merchantability was breached, plaintiff was not entitled to recovery under that theory because, as a consumer lessee of the vehicle from Automotive Leasing Corporation, plaintiff was not in contractual privity with DaimlerChrysler, which manufactured the vehicle.

This defendant recently raised that argument unsuccessfully in *Mydlach*. In that case, this court noted that although the UCC extends a buyer's potential cause of action for breach of the implied warranty of merchantability only to an immediate seller, this privity requirement has

18

1-04-3830

been "relaxed" where (1) a manufacturer has extended a written warranty with a product; and (2) a consumer brought an action against the manufacturer under the Magnuson-Moss Act. *Mydlach*, 364 Ill. App. 3d at 153. See also *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 831, 807 N.E.2d 1165 (2004), citing *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 294-95, 518 N.E.2d 1028 (1988), and *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 315-16, 503 N.E.2d 760 (1986). Defendant does not dispute that a written warranty was provided to plaintiff when he leased the vehicle, and plaintiff's action against defendant has been brought pursuant to the Magnuson-Moss Act. Therefore, defendant was in vertical privity with plaintiff for the purpose of plaintiff's implied warranty of merchantability claim.

CONCLUSION

In summary, we hold that as a lessee of the Jeep Cherokee manufactured by defendant, plaintiff met the definition of a "consumer" under section 2301(3) of the Magnuson-Moss Act, that the "reasonable number of repair attempts" instruction reflected the correct standard, and that sufficient evidence of plaintiff's damages was presented to support the jury's verdict. The judgment for plaintiff on counts I and II of his complaint is affirmed.

Affirmed.

O'MARA FROSSARD and NEVILLE, JJ., concur.

19